UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>                Defendants. | Case No. 1:10-cv-06016<br><br>CLASS ACTION |
| JAMES GREGORY III, on Behalf of Himself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>                Defendants. | Case No. 1:10-cv-07149<br><br>CLASS ACTION |

MEMORANDUM OF LAW IN SUPPORT OF NATIONAL ELEVATOR INDUSTRY PENSION FUND'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL

587740_1

The National Elevator Industry Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (1) consolidation of the related actions pursuant to Fed. R. Civ. P. 42(a); (2) appointment as lead plaintiff in the above-referenced actions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (3) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel and Miller Law LLC ("Miller Law") as liaison counsel for the class.

I.  INTRODUCTION

Presently pending in this district are two related securities class action lawsuits (the "Actions") on behalf of all persons who purchased or otherwise acquired the securities of Baxter International Inc. ("Baxter" or the "Company") between September 16, 2009 and May 3, 2010, inclusive (the "Class Period"), against Baxter and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"): *City of Lakeland Employees Pension Plan v. Baxter Int'l Inc.*, No. 1:10-cv-06016 (filed 09/21/10) and *Gregory v. Baxter Int'l Inc.*, No. 1:10-cv-07149 (filed 11/05/10). In securities class actions, the PSLRA requires district courts to resolve consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Here, the Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Pension Fund should be appointed as lead plaintiff because it: (1) timely filed this motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C.

- 1 -

§78u-4(a)(3)(B)(iii). In addition, the Pension Fund's selection of Robbins Geller and Miller Law as lead and liaison counsel, respectively, for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND

Baxter is a global healthcare company based in Illinois that develops, manufactures and markets products for people with various chronic and acute medical conditions, including hemophilia, immune disorders, infectious diseases, kidney disease and trauma. The Company's products are used by hospitals, kidney dialysis centers, nursing homes, rehabilitation centers, doctors' offices, clinical and medical research laboratories, and by patients at home under physician supervision.

The complaints allege that defendants issued materially false and misleading statements regarding the Company's plasma-derivative products business during the Class Period.[1] Notwithstanding changes in the industry that would inhibit Baxter's growth, defendants assured investors that the Company's recent improvements in gross margin were not only sustainable, but could even expand. Defendants also issued materially false and misleading statements regarding the remediation of the Company's COLLEAGUE infusion pump ("COLLEAGUE pump"). Specifically, defendants failed to disclose that Baxter was not complying with the terms of a June 2006 consent decree it had entered into with the U.S. Food and Drug Administration ("FDA"). As a result of defendants' false and misleading statements about the Company's growth and products, Baxter stock traded at artificially inflated prices during the Class Period, reaching a high of $61.71 per share on January 14, 2010.

---

[1]     The defendants include Baxter; Robert L. Parkinson, Jr. (the Company's Chairman, President and CEO); Robert M. Davis (the Company's CFO); and Norbert G. Riedel (the Company's Vice President and Chief Scientific Officer).

On April 22, 2010, the Company disclosed that it was reducing its guidance for its revenue growth rate by between 50%-80% as a result of continuing pressures in its critical plasma-derivative products business, including a loss in market share, as well as the impact of healthcare reform legislation. Specifically, the Company disclosed it was reducing its revenue guidance for its plasma-derivative products from *growth* in the mid- to high-single-digit to mid-single-digit *decline* and was reducing its revenue guidance for its antibody therapy products from mid-single-digit growth range to a 10% to 15% decline. On this news, some of the artificial inflation propping up Baxter's stock price throughout the Class Period was removed. In fact, the Company's stock declined more than 13% on volume of more than 50 million shares – well over 13 times the average 3-month daily volume. This decline was the largest single-day drop in the Company's stock price in over seven years.

Then, on May 3, 2010, Baxter announced that the FDA had ordered the Company to recall its COLLEAGUE pumps pursuant to its June 2006 consent decree. In response, the FDA issued its own release concerning Baxter's recall, indicating the action was necessary due to the Company's "longstanding failure to correct many serious problems with the pumps." On this news, additional artificial inflation was removed from Baxter's stock price as the Company's stock declined another 5% on high volume.

The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) The failure of a proposed merger between Baxter's two largest competitors was resulting in increased supplies of plasma and increasing pricing pressure;

(b) Baxter failed to disclose known trends and uncertainties related to industry operations and the market for its plasma-derivative products, including that the boost in market share and gross profit margin the Company experienced while the proposed merger was pending was only temporary and the Company would be unable to sustain the benefits it enjoyed upon the failure of the merger;

- 3 -

(c) Baxter's revenue guidance for 2010 related to its plasma-derivative products was misstated and lacked a reasonable basis;

(d) Baxter represented to investors that its long-range plan related to its BioScience division was revenue growth in the 7% to 9% range, when in fact the Company was experiencing a loss in market share and pricing pressures related to its plasma-derivative products, such that Baxter's forecasts based on the long-range plan for the BioScience division lacked a reasonable basis;

(e) The Company failed to disclose that it was not complying with the June 2006 consent decree it entered into with the FDA concerning its COLLEAGUE pumps; and

(f) The Company would be unable complete the remediation of the COLLEAGUE pumps in 2010.

As a result of defendants' materially false and misleading statements, Baxter's stock traded at artificially inflated levels during the Class Period. When defendants disclosed the truth about Baxter's actual business prospects going forward, Baxter's stock price fell nearly 27% from its Class Period high, from $61.71 per share on January 14, 2010 to close at $45.08 per share on May 4, 2010. This drop removed the inflation from Baxter's stock price, causing real economic loss to investors who purchased the stock during the Class Period.

## III. ARGUMENT

### A. The Actions Should Be Consolidated

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a). Here, the Actions assert claims on behalf of purchasers of Baxter securities for alleged violations of the Exchange Act during the Class Period. Each of the Actions name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased Baxter securities at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.

Thus, the Actions should be consolidated. *See generally Craig v. Sears Roebuck & Co.*, 253 F. Supp. 2d 1046, 1047 (N.D. Ill. 2003) (Bucklo, J.).

### B. The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). The Pension Fund meets each of these requirements and should therefore be appointed as lead plaintiff.

#### 1. This Motion Is Timely

The notice published in this action informed class members that the deadline to move for appointment as lead plaintiff was 60 days from September 21, 2010, or November 20, 2010. *See* Motion, Ex. B; 15 U.S.C. §78u-4(a)(3)(A). Because the 60-day deadline fell on a Saturday, pursuant to Fed. R. Civ. P. 6(a)(1)(C), November 22, 2010 is the next day that is not a "Saturday, Sunday or legal holiday" and this Motion is therefore timely filed. In addition, the Pension Fund has submitted a sworn certification confirming its willingness and ability to serve as lead plaintiff. *See* Motion, Ex.

C. Thus, the Pension Fund has complied with the PSLRA's first requirement and is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund lost approximately $1.5 million due to defendants' misconduct. *See* Motion, Exs. C, D. To the best of its counsel's knowledge, there are no other applicants who have sought appointment as lead plaintiff who have a larger financial interest. Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "In selecting the lead plaintiff under the PSLRA," "typicality and adequacy of representation are the only relevant considerations." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *10 (N.D. Ill. 2003) (Pallmeyer, J.) (explaining that a "wide-ranging analysis of the Rule 23 factors should be left for consideration of a motion for class certification").

Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Under Rule 23(a), claims are typical if they "'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the

- 6 -

587740_1

same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *Motorola*, 2003 U.S. Dist. LEXIS 12651, at *11.

Here, the Pension Fund satisfies the typicality requirement for purposes of selecting lead plaintiff because, like other class members, it: (1) purchased Baxter securities during the Class Period; (2) paid allegedly inflated prices because of claimed false and misleading statements by defendants; and (3) thereby suffered damages. Thus, the Pension Fund's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

The Pension Fund was established in 1962 and is based in Newtown Square, Pennsylvania. An eight-member Board of Trustees, an Executive Director and Outside Legal Counsel oversee the Pension Fund which currently manages billions of dollars of assets for the benefit of approximately 40,000 beneficiaries and participants. In addition, the Pension Fund is an experienced fiduciary and has previously served as lead plaintiff in a securities class action. *See* Motion, Ex. C. Further, there is no evidence of antagonism or conflict between the Pension Fund and the class. The Pension Fund's $1.5 million loss demonstrates that it has a sufficient interest in the outcome of the case to ensure zealous advocacy on behalf of the class. *See* Motion, Exs. C-D. Additionally, as explained below, the Pension Fund's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.

Thus, the Pension Fund satisfies the requirements of Fed. R. Civ. P. 23 for the purposes of this Motion.

### C. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Pension Fund has selected Robbins Geller and Miller Law to serve as lead and liaison counsel, respectively.

Robbins Geller, a 180-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Motion, Ex. F. Robbins Geller's reputation for excellence has been repeatedly noted by district courts throughout the country and has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.[2] In addition, Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever, as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.[3]

---

[2] Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008). Similarly, Judge Algenon Marbley, in approving the $600 million recovery by Robbins Geller attorneys in *Cardinal Health*, noted that the "quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Lawyers with Robbins Geller are "nationally recognized leaders in complex securities class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

[3] *See In re Enron Corp. Sec.*, Case No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion recovery for the class is largest in U.S. history and in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (S.D. Ohio) (Marbley, J.) ($600 million recovery for the class was, at the time, the 10th largest in U.S. history and is still the largest recovery ever in the 6th Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, Case No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J.) ($925 million recovery for the class pending final approval and if approved would represent the largest recovery in the 8th Circuit and the 10th largest recovery

The attorneys at Miller Law, a litigation boutique law firm in Chicago, have many decades of experience in complex civil litigation, including securities class actions, in this district. *See* Motion, Ex. E; *see also In re Bank One S'holders Class Actions*, Case No. 00-880 (N.D. Ill. 2000) (Marvin A. Miller appointed by the Court as liaison counsel to draft and file consolidated complaint). The skill and experience of Miller Law's attorneys has been recognized by numerous courts which have appointed the firm to leadership positions in complex securities litigation. Almost two decades ago, Judge Milton I. Shadur of this Court commented on Marvin Miller's skills and said that he is "an experienced securities law class action litigator and who also has 20 years [now 39 years] practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." *In re Telesphere Int'l Sec. Litig.*, 753 F. Supp. 716, 719 (N.D. Ill. 1990) (Shadur, J.). Those same qualities continue and have been recognized by other courts in this district and across the country.[4]

In addition to their individual accomplishments, Robbins Geller's and Miller Law's lawyers have been appointed to serve together as lead and liaison counsel in numerous securities fraud and other complex class actions in this district. *See, e.g., Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co.*, No. 08-2162 (N.D. Ill. 2008) (Gottschall, J.); *Silverman v. Motorola, Inc.*,

---

in U.S. history); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, Case No. 01-cv-1451 (D. Colo.) ($445 million recovery for the class is the largest recovery in the 10th Circuit; Robbins Geller attorneys also created a mechanism that allowed class members to share an additional $250 million recovered by the SEC); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala.) ($671 million recovery for the class is the largest securities settlement in the 11th Circuit).

[4] *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005) (in granting final approval of $75 million settlement in which Miller served as co-lead counsel, the court noted that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way"); *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Miller Law approved as liaison counsel); *Makor Issues & Rights & Ltd. v. Tellabs, Inc.*, No. 02-4356 (N.D. Ill. 2002) (same); *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-7527 (N.D. Ill. 2002) (same). Most notably, the *Makor Issues* case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

No. 07-4507 (N.D. Ill. 2007) (St. Eve, J.); *Takara Trust v. Molex Inc.*, No. 05-1245 (N.D. Ill. 2005) (Castillo, J.); *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-7097 (N.D. Ill. 2005) (Aspen, J.); *Roth v. OfficeMax Inc.*, No. 05-236 (N.D. Ill. 2005) (Gottschall, J.); *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Guzman, J.).

*Household*, in particular, is but one example of how effectively the lawyers from Robbins Geller and Miller Law have successfully worked together to benefit classes of injured investors. Following Robbins Geller's appointment as lead counsel and Miller Law's appointment as liaison counsel, the firms defeated defendants' motions to dismiss and obtained certification of the class. For more than six years, Robbins Geller and Miller Law methodically prepared the *Household* case for trial, including taking more than sixty depositions and reviewing countless millions of pages of documentary evidence. In May 2009, the six-week trial yielded a plaintiffs' verdict. The *Household* trial and favorable verdict demonstrates Robbins Geller's and Miller Law's willingness to commit the necessary resources to protect the interests of the class.

In sum, the experience, resources and synergies which Robbins Geller and Miller Law will bring to this action if appointed as lead and liaison counsel on behalf of the class will ensure the class' interests are responsibly and vigorously advanced. Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller and Miller Law LLC. *See* Motion, Exs. E & F. Accordingly, the Pension Fund's selection of counsel should be approved.

## IV. CONCLUSION

For the foregoing reasons, the Pension Fund respectfully requests that the Court: (1) consolidate the related Actions; (2) appoint the Pension Fund as Lead Plaintiff; and (3) approve its selection of Robbins Geller to serve as Lead Counsel and Miller Law as Liaison Counsel for the class.

DATED: November 22, 2010

Respectfully submitted,

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW E. VAN TINE
LORI A. FANNING


s/MARVIN A. MILLER
MARVIN A. MILLER

115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

[Proposed] Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
DAVID J. GEORGE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

- 11 -

587740_1

CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 22, 2010.

                                              s/ MARVIN A. MILLER
                                              MARVIN A. MILLERS

                                              MILLER LAW LLC
                                              115 S. LaSalle Street, Suite 2910
                                              Chicago, IL 60603
                                              Telephone: 312/332-3400
                                              312/676-2676 (fax)
                                              E-mail: mmiller@millerlawllc.com

587740_1