UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 10 C 6016 (SJC) |
| vs. | Hon. Sharon Johnson Coleman |
| BAXTER INTERNATIONAL INC., ROBERT L. PARKINSON, JR., ROBERT M. DAVIS, and NORBERT G. RIEDEL, | |
| Defendants. | |
| WESTMORELAND COUNTY EMPLOYEE RETIREMENT SYSTEM, Derivatively on Behalf of BAXTER INTERNATIONAL INC., | |
| Plaintiff, | |
| vs. | Case No. 1:11-CV-00151 |
| WALTER E. BOOMER, BLAKE E. DEVITT, JOHN D. FORSYTH, GAIL D. FOSLER, JAMES R. GAVIN III, PETER S. HELLMAN, WAYNE T. HOCKMEYER, JOSEPH B. MARTIN, ROBERT L. PARKINSON JR, CAROLE J. SHAPAZIAN, THOMAS T. STALLKAMP, K.J. STORM, ALBERT P.L. STROUKEN, ROBERT M. DAVIS, NORBERT G. REIDEL, JOY A. AMUNDSON, and PETER ARDUINI, | |
| Defendants, | |
| – and – | |
| BAXTER INTERNATIONAL INC., a Delaware corporation, | |
| Nominal Defendant. | |

**<u>PLAINTIFF WESTMORELAND COUNTY EMPLOYEE RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL</u>**

Plaintiff Westmoreland County Employee Retirement System ("Westmoreland") seeks (1) consolidation pursuant to Fed. R. Civ. P. 42(a) in this Court of the four current (and any later-filed) shareholder derivative actions filed on behalf of Baxter International, Inc. ("Baxter" or "Company"), (2) appointment of Westmoreland as "lead plaintiff" in the consolidated action and (3) appointment of Scott+Scott LLP as "lead counsel" and of Freed Kanner London & Millen LLC as liaison counsel for the consolidated action, and (4) setting a schedule for the filing of a consolidated complaint and for defendants' responses thereto, including a briefing schedule for any motions to dismiss.[1]

## I. Consolidating All Related Actions Promotes Judicial Economy.

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Westmoreland seeks to consolidate in this Court four derivative actions seeking to assert claims on behalf of Baxter:

| CASE NAME | CASE NO. | JUDGE |
|---|---|---|
| *North Miami Gen. Emp. Ret. Fund, et al. v. Parkinson, et al.* | 10 C 6514 | Hon. Edmund E. Chang |
| *Salyers v. Boomer, et al.* | 10 C 7131 | Hon. George M. Marovich |
| *Louisiana Mun. Police Emp. Ret. System v. Parkinson, et al.* | 10 C 7317 | Hon. James B. Zagel |
| *Westmoreland Cty. Emp. Ret. System v. Baxter Internat'l, et al.* | 11 C 0151 | Hon. William J. Hibbler |

On January 19, 2011, all four cases were reassigned to this Court for purposes of coordinated discovery proceedings with *Lakeland City Employees Pension Plan v. Baxter International, Inc., et al.*, No. 10 C 6016, the federal securities case arising out of the same alleged wrongdoing.[2]

---

[1] Westmoreland has submitted to the Court a proposed order granting the relief requested herein pursuant to the Court's Individual Practices.

[2] Westmoreland requests that, if necessary, this Court's reassignment order be clarified so as to expressly encompass this Court's consolidation of the four shareholder derivative cases for purposes of filing a consolidated amended complaint ("CAC"), overseeing any motions practice regarding the

1

Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact and the court finds that consolidation would avoid unnecessary costs or delay. *See, e.g., Taubenfeld v. Career Educ. Corp.,* No. 03-8884, 2004 WL 554810, at *1 (N.D. Ill. March 19, 2004) (finding consolidation appropriate because "given the similarity of the claims, the court believes that consolidation of these cases will result in substantial savings of judicial time and effort."); *Disher v. Citigroup Global Markets, Inc.*, 487 F. Supp. 2d 1009, 1014 (S.D. Ill. 2007) ("it is apparent to the Court that [the cases] should be consolidated, if only to prevent further needless cluttering of the Court's docket through repeated notices of removal as to what is in fact only a single case."); *Miller v. Ventro Corp.*, No. 01-1287, 2001 WL 34497752, at *2 (N.D. Cal. Nov. 28, 2001) ("The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact."). The rule is invoked to further interests of judicial economy and to eliminate unnecessary repetition and confusion. This Court has the broad discretionary authority under Fed. R. Civ. P. 42(a) to consolidate cases. *See Paxonet Communications, Inc. v. TranSwitch Corp.*, 303 F.Supp.2d 1027, 1028-29 (N.D. Cal. 2003) (citing *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) ("Consolidation is within the broad discretion of the district court.")).

The purpose of consolidation is judicial economy, efficiency and conservation of the parties' financial resources. Consolidation inures to the benefit of all parties involved in the various actions

---

CAC, supervising discovery based on the CAC, and appointment of lead plaintiff and lead counsel to facilitate the order.

and such a procedure has been frequently utilized in complex multi-party actions. As both the Second and Ninth Circuits have recognized, the "benefits achieved by consolidation and the appointment of general counsel, *i.e.* elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977)(citing *MacAlister v. Guterma,* 263 F.2d 65, 69 (2d Cir. 1958)).

Consolidation is appropriate in this case because the four derivative actions allege substantially overlapping claims against certain current and former Baxter officers and directors Defendants arising out of (1) Defendants' failure to comply with the Consent Decree for Condemnation and Permanent Injunction entered between Baxter and the FDA on June 29, 2006 regarding the remediation of defects in Baxter's Colleague Infusion Pumps ("2006 Consent Decree"); (2) Defendants' misleading failure to reveal to investors their intent to violate the 2006 Consent Decree; (3) Defendants' issuance of material false statements regarding forecasted revenue and earnings growth in its plasma protein therapies business, giving the market a false belief that the current profitability in that business would continue unabated, even though Defendants knew that was not the case, (4) Defendants' persistent failure to correct serious quality control issues for some of the Company's pharmaceutical products, causing harm to the Company's reputation, and a plethora of regulatory warnings and product liability lawsuits; and (5) insider trading.[3] *See, e.g.,*

---

[3] Westmoreland alleges an additional set of wrongdoing in connection with the Defendants' reckless failure to conduct meaningful quality control over a supplier of an essential ingredient for Heparin manufactured in a plant in China causing approximately eighty patient deaths, a Class 1 product recall in January 2008 and a serious erosion of share price in November 2008. *See Westmoreland* Compl. ¶3.

3

*Westmoreland* Complaint, ¶ 3; *North Miami* Complaint, ¶1; *LAMPERS* Complaint, ¶¶3-4, 6; *Salyers* Complaint, ¶¶3-4. The four complaints are attached as Exhibits A-D, respectively, to the Declaration of Judith S. Scolnick ("Scolnick Decl."). All four complaints seek similar relief premised upon similar or identical causes of action: breach of fiduciary duty, waste, and gross mismanagement. Thus, the actions involve common questions of law and fact concerning the alleged fiduciary duty breaches and share substantially the same defendant parties, contain the same or substantially similar factual allegations, allege the same or substantially the same causes of action, and seek the same or substantially the same relief on behalf of the Company.

## II. The Court Should Appoint Westmoreland as Lead Plaintiff, Scott+Scott LLP as Lead Counsel, and Freed Kanner London & Millen LLC as Liaison Counsel.

It is well established that the court may appoint a plaintiff leadership structure to coordinate the prosecution of complex litigation. *Lee ex rel Coherent, Inc. v. Ambroseo*, No. 07-955, 2007 WL 1558565, at *2 (N.D. Cal. May 29, 2007); *Vincent*, 557 F.2d at 774-75. Likewise, the utility in appointing lead counsel in complex actions such as this one is well recognized. As stated by one court:

> The benefits achieved by consolidation and the appointment of general counsel, *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation. The advantages of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

*MacAlister*, 263 F.2d at 69; *See also Vincent*, 557 F.2d at 774. In addition, the *Manual for Complex Litigation, Fourth* ("MCL 4th") recognizes the benefits of promptly appointing a leadership structure of plaintiffs' counsel in complex multi-party litigation. *See* MCL 4th §10.22.

### A. Westmoreland Should be Appointed Lead Plaintiff

Westmoreland should be appointed lead plaintiff because, by exercising its right to review Baxter's books and records pursuant to 8 Del. C. §220, it has obtained and reviewed portions of some of the key Board and Committee minutes concerning the wrongdoing at issue in this case. Consequently, Westmoreland has pled the strongest, most particularized complaint and is best positioned to overcome the demand futility requirement imposed in derivative cases. Moreover, since Westmoreland is the only Plaintiff to have taken advantage of Delaware law and actually obtained some highly relevant documents, it is the best suited Plaintiff to efficiently conduct discovery and achieve positive results for Baxter shareholders. Therefore, under Delaware and federal case law, Westmoreland is the most appropriate lead plaintiff.

Fed. R. Civ. P. 23.1 provides that a plaintiff in a shareholders' derivative action must "fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation or association." Factors courts have considered in analyzing a plaintiff's fitness to be lead plaintiff include: (1) quality of pleadings, (2) size of financial stake, (3) preference for institutional plaintiffs (4) vigorousness of prosecution (5) attorney's fees. *See, e.g., Dollens v. Zionts*, Nos. 01-5931 and 01-2826, 2001 WL 1543524, at **5-6 (N.D. Ill. Dec. 4, 2001) (citing to *TCW Technology Limited Partnership v. Intermedia Communications, Inc.*, 2000 WL 1654504 (Del.Ch., Oct. 17, 2000)); *see also In re Foundry Networks, Inc. Deriv. Litig.*, No. 06-5598, 2007 WL 485974, at *1 (N.D. Cal. Feb. 12, 2007); *Wright v. Krispy Kreme Doughnuts, Inc.*, 232 F.R.D. 528, 530 (M.D.N.C. 2005).[4] In this case, all of these five factors either support appointment of Westmoreland as lead plaintiff or are neutral.

---

[4] Westmoreland has satisfied the threshold requirements relevant to the selection of a lead plaintiff. Westmoreland has held shares continuously through the relevant period. *See Westmoreland* Complaint ¶¶2, 20. Furthermore, Westmoreland does not appear to be subject to any unique defenses and, as explained below, has selected competent counsel. As such, Westmoreland can

**i. Quality of Pleadings:** Under both Delaware and federal law, "the quality of the pleading that appears best able to represent the interests of the . . . derivative plaintiffs" is an important factor in the selection of lead plaintiff. *See, e.g., Dollens*, 2001 WL 1543524, at *4; *TCW Technology*, 2000 WL 1654504, at *4. This factor strongly favors appointment of Westmoreland as lead plaintiff.

Of all the potential lead plaintiffs, only Westmoreland investigated the wrongdoing at issue in the four derivative cases by reviewing confidential corporate records from Baxter pursuant to a books and records investigation under 8 Del. C. §220. As numerous Delaware courts have recognized, the review of such documents is a critical step in developing a derivative case because plaintiffs in such cases generally must plead ***with particularity*** why demand upon the corporation's Board of Directors was futile, *i.e.*, the reasons why the Board should be disqualified from considering the claims that the derivative plaintiff seeks to assert. *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1048-49 (Del. 2004) ("The issue in this case is the quantum of doubt about a director's independence that is 'reasonable' in order to excuse a presuit demand. . .The Court must determine whether a plaintiff has ***alleged particularized facts*** creating a reasonable doubt of a director's independence . . .) (emphasis added). If a derivative plaintiff cannot satisfy this pleading burden, his complaint will be dismissed. *See id.* While hardly insurmountable, the requirement that a plaintiff plead demand futility with "particularity" is significant.

---

"fairly and adequately" represent the class within the meaning of Fed. R. Civ. P. 23.1. *See Dollens*, 2001 WL 1543524, at *2. Since it appears that all potential lead plaintiffs have satisfied these basic requirements, the Court's analysis will likely turn on the five *Dollens* factors.

A Plaintiff who, like Westmoreland, has utilized the qualified right under 8 Del. C. §220 to inspect corporate books and records generally has a substantial advantage in formulating a complaint that is sufficiently particularized:

> "In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. The general unavailability of discovery to assist plaintiffs with pleading demand futility does not leave plaintiffs without means of gathering information to support their allegations of demand futility, however. **Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts.**"

*Beam*, 845 A.2d at 1056 (emphasis added). *See also id.* at 1057 n. 52 (criticizing plaintiffs who file "weak" derivative complaints without having reviewed relevant books and records as a "drain on resources.")

In this case, Westmoreland has sought and received from Baxter portions of the minutes before the full Board of Directors, and relevant Board Committees, pertaining to what director Defendants knew and when they knew it concerning the Company's efforts to remediate the Colleague Pump and the anticipated growth prospects for the Company's plasma business. These minutes enabled Westmoreland to make its complaint far stronger and more particularized than those of the other potential lead plaintiffs. *See* Westmoreland's Books and Records Letter, dated October 18, 2010 (Scolnick Decl., Ex. E); *Westmoreland* Complaint, ¶ 59 and Exs. C1-C59.[5] Accordingly, Westmoreland has the complaint that best serves the "interests of the. . . derivative plaintiffs." *Dollens*, 2001 WL 1543524, at *4. The appointment of any other plaintiff as lead would

---

[5] ¶59 of the *Westmoreland* Complaint and Exs. C1-C59 were filed under seal. The information received by Westmoreland is subject to a confidentiality agreement and cannot be publicly divulged or shared with the other plaintiffs.

disadvantage all of the derivative plaintiffs and force the Court to invest resources dealing with a complaint that is not as well developed as it could be.[6]

   **ii. Size of Financial Stake:** Westmoreland currently holds approximately 15,900 shares of Baxter stock. *Westmoreland* Complaint, ¶20. While the other Plaintiffs failed to plead their financial interest in Baxter, Westmoreland's interest is large enough to give it a significant interest in the outcome of this litigation.

   **iii. The Preference for Institutional Plaintiffs:** Institutional plaintiffs such as Westmoreland are preferred to individuals in the lead plaintiff selection process because such investors are more likely to prevent frivolous lawyer-driven litigation. As large shareholders, institutions "have the most to gain from meritorious securities litigation." *See Dollens*, 2001 WL 1543524, at *5. Three potential lead plaintiffs in this action, Westmoreland, North Miami and LAMPERS, are institutional plaintiffs and are, therefore, more appropriate as lead plaintiff than the fourth potential lead plaintiff, Salyers, who is an individual.

   **iv. Vigorousness of Prosecution:** This factor strongly favors appointment of Westmoreland because, as described above, Westmoreland alone has taken the initiative to utilize 8 Del. C. § 220 to gain access to important, non-public, documents and craft the best complaint. *See Dollens*, 2001 WL 1543524, at *6 (finding that the most vigorous plaintiff was the one who had attempted to advance the case by "fil[ing] numerous discovery requests.").

   **v. Attorney's Fees**: Westmoreland, as an institutional plaintiff, has worked out a fair,

---

[6] Salyers' allegations of violations of §§10 and 20 of the Exchange Act of 1934 in her complaint in connection with Baxter's $1.4 billion Baxter stock do not strengthen her Complaint, and actually subjects shareholder derivative plaintiffs to a higher level of proof. See *Salyers* Complaint ¶¶112-24. It is questionable whether the generalized allegations in the *Salyers* Complaint can satisfy the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

arms-length agreement with Scott+Scott LLP regarding attorney's fees. As such, this factor favors appointment of Westmoreland as lead plaintiff.

### B. Scott+Scott LLP Should Be Appointed Lead Counsel and Freed Kanner London & Millen LLC Should Be Appointed Liaison Counsel

"[A]bsent extraordinary circumstances," a lead plaintiff "should be able to select [its] own counsel." *Dollens*, 2001 WL 1543524, at *6. Therefore, the Court should appoint Westmoreland's selection, Scott+Scott LLP, as lead counsel and Freed Kanner London & Millen LLC as Liaison Counsel.

Both Scott+Scott and Freed Kanner possess ample experience in litigating complex shareholder derivative actions and have demonstrated a high level of professionalism in securing a number of significant recoveries in the recent past. *See* Scolnick Decl., Exs. F and G (Resumes of Scott+Scott and Freed Kanner). As one example, Scott+Scott secured a major settlement for Lattice Semiconductor Corporation in *In re Lattice Semiconductor Corp. Deriv. Litig.*, Case No. C 043327CV (Cir. Ct. Oregon). Scolnick Decl., ¶10. This settlement was significant not only in monetary terms, but also in the reforms that the recovery initiated, including termination of the then CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices. *Id.* Scott+Scott was similarly instrumental in negotiating critical changes to Lattice's Board independence, selection and accountability. *Id.* Scott+Scott is also currently prosecuting several shareholder derivative actions on behalf of pharmaceutical companies and has developed a particular expertise in this area that can prove exceedingly helpful in devising corporate governance reforms to ensure compliance with FDA laws and regulations in this highly regulated field.

Moreover, Scott+Scott has a proven track record for excellent cooperation and communication in the prosecution of complex litigation and for representing the best interest of

shareholders. As described in a decision by the Supreme Court of the State of New York, New York County in *New York University v. Ariel Fund Limited, et. al.*, No. 603803/08, at 9-10 (N.Y. Sup. Ct. Feb. 22, 2010), Scott+Scott LLP is a highly regarded law firm that will ably prosecute this litigation. As Judge Lowe stated in *Ariel*, "It is this Court's position that Scott+Scott did a superlative job in its representation, which substantially benefitted Ariel . . . For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. . . They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors."

### III. The Court Should Set a Schedule For The Filing of a Consolidated Derivative Complaint.

In addition to consolidating the four derivative cases, the Court should set a schedule for lead plaintiff to file a consolidated amended complaint and for Defendants to respond, including a briefing schedule in the event that Defendants file any motions, such as a Rule 12 motion to dismiss, in response to the consolidated amended complaint. A consolidated amended complaint will provide Plaintiffs with the opportunity to reconcile any current differences between the pending complaints. Westmoreland proposes the following schedule:

1. Plaintiffs shall file a consolidated amended complaint within forty-five (45) days of the entry of the Court's Order consolidating the derivative actions;

2. Defendants shall file their responses; including any motions to dismiss, within forty-five (45) days of the filing and service of the consolidated amended complaint;

3. Plaintiffs shall file their opposition to Defendants' motion(s) within forty-five (45) days of filing and service; and

4. Defendants shall file their replies, if any, to Plaintiffs' opposition within twenty-one (21) days after service of the opposition.

**IV.     CONCLUSION**

In the interest of judicial economy and for the reasons set forth herein, Westmoreland respectfully requests that the Court order consolidation of all present and subsequently filed related actions, appoint Westmoreland as lead plaintiff, Scott+Scott as lead counsel and Freed Kanner as liaison counsel for the actions, and set a schedule for the filing of a consolidated derivative complaint and the responses by defendants thereto.

Dated:  January 26, 2011                              FREED KANNER LONDON & MILLEN LLC

s/ Michael J. Freed
Michael J. Freed
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015 USA
Telephone:  (224) 632-4500
Facsimile:  (224) 632-4521
Email:  mfreed@fklmlaw.com

SCOTT+SCOTT LLP
Judith S. Scolnick
Donald A. Broggi
500 Fifth Avenue, 40th Floor
New York, NY  10110
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
Email:  jscolnick@scott-scott.com
           dbroggi@scott-scott.com

SCOTT+SCOTT LLP
Hal Cunningham
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
Email:  hcunningham@scott-scott.com

*Counsel for Plaintiff Westmoreland County Employee Retirement System*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing Plaintiff Westmoreland County Employee Retirement System's Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel, together with accompanying papers, to be served via the Court's electronic filing system on all counsel of record in this action. In addition, I served the foregoing on the following parties via email and regular mail:

Jeffrey A. Leon
FREED & WEISS LLC
111 West Washington, Suite 1331
Chicago, IL 60602

*Counsel for Patricia Salyers* - (Case No. 10 C 7131)

Dated: January 26, 2011

                                                    s/ Michael J. Freed
                                                    Michael J. Freed