UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>Defendants. | Case No. 1:10-cv-06016<br><br>CLASS ACTION<br><br>Assigned to: Judge John J. Tharp, Jr. |

**LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF TRADING RECORDS**

Lead Plaintiff National Elevator Industry Pension Fund ("Lead Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' Motion to Compel Production of Trading Records ("Motion") from Lead Plaintiff. Dkt. No. 195.

**I.     BACKGROUND**

On March 17, 2014, Defendants served their Third Request for Documents on Lead Plaintiff requesting the production of "Documents reflecting your purchases, sales, and holdings of Baxter

common stock between the end of the Putative Class Period and the present." Motion at 1. On April 16, 2014, Lead Plaintiff served its Objections and Responses to Defendants' request, and stated:[1]

> Lead Plaintiff objects to this Request to the extent that the information sought includes materials that are neither relevant to the litigation or any of the claims or defenses, nor reasonably calculated to lead to the discovery of admissible evidence. Lead Plaintiff further objects to locating and producing documents related to post-Class Period trading in Baxter common stock as overly broad and unduly burdensome because any such trading, to the extent it may exist, is irrelevant to the issues in this case.

Dkt. No. 195-2 at 5.

On April 24, 2014, Defendants filed their Motion, arguing the trading records are highly relevant to the issue of Lead Plaintiff's reliance on "Defendants' alleged fraudulent acts." Motion at 2.

## II. POST-CLASS PERIOD TRADING RECORDS ARE IRRELEVANT TO REBUTTING THE PRESUMPTION OF RELIANCE ON DEFENDANTS' CLASS PERIOD FALSE STATEMENTS

Although Defendants claim a need for Lead Plaintiff to produce *four years* of post-Class Period trading records, they do not point the Court to a single case, let alone one from within the Seventh Circuit, supporting their position. *See* Motion at 1-2. The reason is simple: post-Class Period trading is irrelevant. Lead Plaintiff's investment decisions post-Class Period, even if those decisions included Baxter stock, have no connection to the issue of whether Lead Plaintiff relied during the Class Period on the statements underlying Defendants' fraud.

---

[1] As set forth in Lead Plaintiff's Motion for Class Certification [Dkt. Nos. 128-129], Lead Plaintiff seeks to certify this securities litigation as a class action on behalf of those persons and entities who purchased or otherwise acquired the publicly traded common stock of Baxter International Inc. ("Baxter" or the "Company") from June 10, 2009 through May 3, 2010, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are: (1) Defendants; (2) members of the Individual Defendants' immediate families; (3) any entity in which Defendants have or had a controlling interest; (4) Baxter's officers and directors; and (5) the legal representatives, heirs, successors, or assigns of any excluded party.

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Sheehan v. Kruger,* No. 1:11-CV-210, 2012 U.S. Dist. LEXIS 172231, at *3 (N.D. Ill. Dec. 5, 2012) (Cosbey, J.) (quoting *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978)).[2]

Although Defendants posit that they can sever Lead Plaintiff's reliance on their false and misleading statements made during 2009 and 2010 with *ex post facto* trades in Baxter common stock, they fail to inform the Court of the vast weight of authority that undercuts their Motion. At bottom, Defendants' argument that trading records from, for example, 2013 or 2014 have any bearing or relevance on Plaintiff's **Class Period** reliance on Defendants' Class Period statements simply defies logic.

The overwhelming weight of authority makes clear that post-Class Period trading is of no consequence *vis-à-vis* reliance. Although it has not been uncommon for defendants in securities fraud litigation to seek after-the-fact trading records in an effort to undermine a plaintiff's ability to meet the typicality requirement of Rule 23(a)(3) of the Federal Rules of Civil Procedure – something Defendants here did not do – those efforts regularly fail.[3]

---

[2] Citations, footnotes, and internal quotations omitted and emphasis added unless noted otherwise.

[3] To the extent Defendants seek discovery to raise arguments regarding Lead Plaintiff's typicality, they are far too late. Briefing on class certification completed nearly a year ago, and arguments not raised – especially when they could have been raised – are waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Courts in the Northern District of Illinois and around the country routinely hold that "the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of the corrective information has *no bearing on whether or not [the representative] relied* on the integrity of the market during the class period." *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 172 (N.D. Ill. 2009) (St. Eve, J.); *Fry v. UAL Corp.*, 136 F.R.D. 626, 632 (N.D. Ill. 1991) (Nordberg, J.) ("Because subsequent purchases by the plaintiffs are *irrelevant* to the liability of UAL with regard to alleged misrepresentations effecting the earlier sales of securities by the plaintiffs, such purchases do not render the claims of Fry and Dwyer atypical."); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 446 (S.D. Ohio 2009) (granting class certification over Skadden's objections and finding a post-class period purchase six days after the class period to be *irrelevant*). In *Motorola*, Judge St. Eve reasoned:

> Under facts closer to this case, however, many courts have held that post-Class Period purchases alone will not automatically disqualify class representatives:
>
> "As numerous courts have held, the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information ***has no bearing*** on whether or not [the representative] relied on the integrity of the market during the class period, that is, before the information at issue was corrected or changed. In other words, the fact that an investor purchased additional shares upon learning the new information does not mean that he or she did not rely on the integrity of the market in purchasing shares before the new information was known. The post-disclosure purchase of the additional shares therefore will not necessarily present individual issues of reliance that render the investor atypical or inadequate to represent class members who did not purchase such additional shares."

259 F.R.D. at 172 (quoting *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008) (quoting *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 216 (S.D.N.Y. 2006), vacated and remanded on other grounds, 544 F.3d 474 (2d Cir. 2008))); *see also In re Merck & Co., Inc., Sec., Deriv. & "ERISA" Litig.*, MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511, at *45-*46 (D.N.J. Jan. 30, 2013) ("For example, the post-disclosure purchases by Reynolds and MPERS

4

have 'no bearing on whether or not [they] relied on the integrity of the market during the class period.'") (quoting *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012)); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46-47 (S.D.N.Y. 2012) ("Defendants' arguments [regarding post-disclosure investments in Pfizer] do not establish that TRSL is subject to a unique defense"); *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 269, n.7 (N.D. Ill. 1992) (Aspen, J.) ("Bally's contention that plaintiff Karinsky's claims are atypical because he purchased stock *after* the proposed class period is unavailing.") (emphasis in original); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586 (C.D. Cal. 2009) (granting class certification over Skadden's objections based on, among other things, post-class period purchases); *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 122-24 (E.D. Va. 2012) (same, and reasoning that "[t]he decision to purchase after a post-disclosure drop, however, does not carry the inference that Ontario Teachers would have purchased at the inflated pre-disclosure price had it known the truth"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 168-69 (S.D.N.Y. 2010) (granting certification of equity holders class over Skadden's objections); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (same); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260 (N.D. Ala. 2009) (same); *In re Firstplus Fin Grp., Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *16-*17 (N.D. Tex. Oct. 23, 2002) (disagreeing with defendants that post-class period purchases present a unique defense that destroys typicality).

Indeed, "post-disclosure purchases may well make sound economic sense in an efficient market because the market reflects news of any corrective disclosures in the stock price, typically lowering the stock price." *Computer Scis.*, 288 F.R.D. at 124; *see, e.g.*, *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) ("Rolling over an option in an effort to cover some losses is a common investment strategy, and does not demonstrate that a plaintiff failed to rely on the integrity

5

of the market."); *In re Atlantic Fin. Fed. Sec. Litig.*, No. 89-0645, 1990 U.S. Dist. LEXIS 15965, *10 (E. D. Pa. Nov. 28, 1990) ("I cannot infer that the integrity of the market price was irrelevant to these Plaintiffs solely because they made purchases after disclosure of the alleged fraud. . . . It is plausible that Plaintiffs thought once the fraud was disclosed, the true value of the stock would become apparent, the market price would adjust accordingly, and Plaintiffs could decrease their losses by further purchases."); *Rosen v. Textron, Inc.,* 369 F. Supp. 2d 204, 209 (D.R.I. 2005) (finding that "the fact that Bear Sterns concluded, for example, that Textron stock was a good buy at $32.77, following full disclosure, is essentially irrelevant to the question whether it relied on misleading information in buying Textron stock at, for example, $50.51 during the Class Period").

Testimony here supports application of the reasoning set forth above. On February 13, 2013, prior to filing their opposition to Lead Plaintiff's motion for class certification, counsel for Defendants deposed Robert O. Betts, Jr. ("Betts"), Lead Plaintiff's Executive Director. During his deposition, Betts specifically stated that Lead Plaintiff did not request that its investment advisors cease trading of Baxter common stock subsequent to the disclosure of Defendants' fraud. Dkt. No. 146-1 at 111:9-13. When questioned whether Lead Plaintiff, "a $5 billion pension fund," was concerned that it could continue to be invested in Baxter following the close of the Class Period, Betts testified: "Now, Baxter is a big company, and there's lots of things going on at Baxter besides the – the – the matters that affected – that resulted in this – this lawsuit. And we would expect that our investment managers would be aware of that information and make decisions based upon that publicly available information." *Id*. at 73:16-17; 112:2-9.

Moreover, evidence of Lead Plaintiff's post-Class Period Baxter trades would not assist Defendants in attempting to rebut the fraud-on-the-market doctrine. As the Seventh Circuit reasoned, "'reliance' is a synthetic term. It refers not to the investor's state of mind but to the effect

produced by a material misstatement or omission." *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1170 (7th Cir. 1995). As stated by the Seventh Circuit in *Schleicher v. Wendt*:

> When someone makes a false (or true) statement that adds to the supply of available information, that news passes to each investor ***through the price of the stock***. And since all stock trades at the same price at any one time, every investor effectively possesses the same supply of information. The price both transmits the information and causes the loss.

618 F.3d 679, 682 (7th Cir. 2010). "Thus, when the fraud-on-the-market theory applies, 'the plaintiff has indirect knowledge of the misrepresentation or omission underlying the fraud. He is reacting to a change in price, and the change was induced by a misrepresentation, so he receives as it were the distant signal of the misrepresentation and acts in response to it.'" *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 931 (N.D. Ill. 2010) (Guzman, J.) (quoting *Hartmann v. Prudential Ins. Co. of Am.*, 9 F.3d 1207, 1213 (7th Cir. 1993)).

In order to rebut the presumption of reliance, Defendants must show that in purchasing Baxter shares, Class members did not rely on the integrity of Baxter's stock price. *See id*. The *Basic* Court said a defendant could rebut the presumption by making a showing that: (1) "the market makers were privy to the truth . . ., and thus that the market price would not be affected by [defendants'] misrepresentations; (2) the truth had credibly entered the market and dissipated the effects of the misstatements; or (3) something severed the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Id*. (quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 248-49 (1988)). Evidence of post-Class Period trading does none of these things.

Accordingly, Lead Plaintiff's continued trading of Baxter common stock – to the extent it occurred at all – in the four years following the end of the Class Period is irrelevant, has no bearing on this litigation or Lead Plaintiff's reliance on Defendants' false and misleading statements, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants' request for such discovery is designed solely to harass and burden Lead Plaintiff with unnecessary discovery.

## III. CONCLUSION

In light of the foregoing, Lead Plaintiff respectfully requests that the Court deny Defendants' Motion.

DATED May 6, 2014 /s/ Lori A. Fanning

MARVIN A. MILLER
MATTHEW E. VAN TINE
LORI A. FANNING
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

*Liaison Counsel for Lead Plaintiff*

DAVID J. GEORGE
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
HOLLY W. KIMMEL
JANINE D. ARNO
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

JASON A. FORGE
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

*Lead Counsel for Lead Plaintiff*

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 6, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

/s/     Lori A. Fanning