UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 1:10-cv-06016 |
| | | CLASS ACTION |
| Plaintiff, | ) ) ) | Judge John J. Tharp, Jr. |
| vs. | ) ) | |
| BAXTER INTERNATIONAL INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1059292_1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE LITIGATION ...................................................................2

III.    TERMS OF THE SETTLEMENT .......................................................................4

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............4

      A.      The Proposed Settlement Meets the Standard for Preliminary Approval................4

      B.      The Factors Considered When Granting Final Approval Also Support Preliminary Approval of the Proposed Settlement ...................................................6

V.      CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE...........................................................................................................10

      A.      Rule 23(a)(1) – Numerosity ....................................................................................11

      B.      Rule 23(a)(2) – Commonality..................................................................................11

      C.      Rule 23(a)(3) – Typicality .......................................................................................12

      D.      Rule 23(a)(4) – Adequacy of Representation .........................................................13

      E.      The Class May Be Properly Certified Under Rule 23(b)(3)................................14

VI.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ........................15

VII.    PROPOSED SCHEDULE OF EVENTS.............................................................17

VIII.   CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Van Kampen Funds, Inc.*,
　　No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022
　　(N.D. Ill. Aug. 27, 2002) ............................................................................................ 12

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
　　No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
　　(N.D. Ill. July 26, 2011) ................................................................................................ 6

*Amchem Prods. v. Windsor*,
　　521 U.S. 591 (1997) ........................................................................................ 10, 14, 15

*Anixter v. Home-Stake Prod. Co.*,
　　77 F.3d 1215 (10th Cir. 1996) ....................................................................................... 9

*Armstrong v. Bd. of Sch. Dirs.*,
　　616 F.2d 305 (7th Cir. 1980) .................................................................................... 5, 10

*Dura Pharms, Inc. v. Broudo*,
　　544 U.S. 336 (2005) ....................................................................................................... 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
　　787 F.3d 408 (7th Cir. 2015) .......................................................................................... 9

*Goldsmith v. Tech. Solutions Co.*,
　　No. 92 C 4374, 1995 WL 17009594
　　(N.D. Ill. Oct. 10, 1995) ................................................................................................ 8

*Heekin v. Anthem, Inc.*,
　　No. 1:05-CV-01908-TWP-TAB, 2012 WL 5472087
　　(S.D. Ind. Nov. 9, 2012) ................................................................................................ 9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
　　688 F.3d 713 (11th Cir. 2012) ....................................................................................... 9

*In re Apple Computer Sec. Litig.*,
　　No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
　　(N.D. Cal. Sept. 6, 1991) ............................................................................................... 9

*In re Delphi Corp. Sec.*,
　　248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................ 1

**Page**

*In re Groupon, Inc. Sec. Litig.*,
No. 12 CV 2450, 2014 U.S. Dist. LEXIS 137382
(N.D. Ill. Sept. 23, 2014) ..........................................................................14

*In re Hartmarx Sec. Litig.*,
No. 01 C 7832, 2002 U.S. Dist. LEXIS 18273
(N.D. Ill. Sept. 19, 2002) ..........................................................................11

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ...........................................................................9

*In re NeoPharm, Inc. Sec. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ...............................................................11

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
No. 97 C 177, 2000 U.S. Dist. LEXIS 18285
(N.D. Ill. Dec. 8, 2000) ..................................................................11, 12, 14

*In re Tyco Int'l, Ltd.*,
535 F. Supp. 2d 249 (D.N.H. 2007).............................................................8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..........................................................4, 7, 10

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ....................................................................12

*King v. Kansas City S. Indus., Inc.*,
519 F.2d 20 (7th Cir. 1975) ......................................................................10

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)..................................................................................14

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ..................................................................9

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) .............................................................11, 13

*Roth v. Aon Corp.*,
238 F.R.D. 603 (N.D. Ill. 2006)............................................................10, 12

- iii -

**Page**

*Schleicher v. Wendt,*
618 F.3d 679 (7th Cir. 2010) ...........................................................14

*Silverman v. Motorola, Inc.,*
259 F.R.D. 163 (N.D. Ill. 2009)....................................................13, 14

*Tatz v. Nanophase Techs. Corp.,*
No. 01 C 8440, 2003 U.S. Dist. LEXIS 9982
(N.D. Ill. June 13, 2003) .............................................................11, 12

*Wong v. Accretive Health, Inc.,*
773 F.3d 859 (7th Cir. 2014) ...........................................................6, 7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b).......................................................................................12
§78u-4(a)(7) ...............................................................................16

28 U.S.C.
§1292(b) ......................................................................................3

Federal Rules of Civil Procedure
Rule 23 ..................................................................................10, 13
Rule 23(a)............................................................................10, 14, 15
Rule 23(a)(1)..............................................................................11
Rule 23(a)(2)..............................................................................11
Rule 23(a)(3)..............................................................................12
Rule 23(a)(4)..............................................................................13
Rule 23(b)............................................................................10, 14, 15
Rule 23(b)(3)...............................................................................14
Rule 23(e)...........................................................................5, 6, 10
Rule 23(e)(1)..............................................................................15
Rule 23(g)................................................................................15
Rule 23(h)(1)..............................................................................16

17 C.F.R.
§240.10b-5 .................................................................................12

**SECONDARY AUTHORITIES**

5 James Wm. Moore,
*Moore's Federal Practice* (3d ed. 2013)
§23.162[3].................................................................................10

- iv -

**Page**

*Manual for Complex Litigation* (4th ed. 2004)
§13.14..................................................................................................................................5

1059292_1

## I.     INTRODUCTION

Lead Plaintiff National Elevator Industry Pension Fund respectfully submits this memorandum in support of preliminary approval of the settlement on the terms set forth in the Settlement Agreement dated August 11, 2015 (the "Stipulation" or "Settlement"), filed contemporaneously herewith.[1]  Following mediation before the Honorable Layn R. Phillips (Ret.), a highly respected and experienced mediator of complex class actions, the parties have reached an agreement to settle Lead Plaintiff's and the Class' claims.  The Settlement provides for the payment of $42,500,000 for the benefit of the Class.[2]

The Settlement is the result of extensive litigation and well-informed, arm's-length negotiations between and among highly experienced counsel, facilitated by Judge Phillips.[3]  The Settlement was not reached at an early stage of the litigation.  During the course of the litigation Lead Plaintiff and Lead Counsel engaged in, among other things, extensive motion practice, proceedings before the Seventh Circuit Court of Appeals, the review and analysis of the production of almost four million pages of documents by Defendants and third parties, the taking or defending of some 27 fact depositions, and the completion of expert discovery on damages and loss causation.

Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving

---

[1]     All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation.

[2]     The Settlement is on behalf of the following Class: all Persons who purchased or otherwise acquired Baxter common stock during the period from June 10, 2009 through and including May 3, 2010.  Excluded from the Class are Defendants, the officers and directors of Baxter during the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which a Defendant has or had a controlling interest.  Also excluded from the Class are those Persons who timely and validly exclude themselves therefrom.

[3]     *See, e.g.*, *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14  (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of [this] former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

Settlement and Providing for Notice ("Notice Order"). The Notice Order will (1) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) approve the form and method for providing notice of the Settlement to the Class; and (4) schedule a settlement hearing (the "Settlement Hearing") at which the Court will consider the request for final approval of (a) the Settlement set forth in the Stipulation, (b) the Plan of Allocation of settlement proceeds among Class Members, (c) Lead Counsel's application for an award of attorneys' fees and expenses, and (d) Lead Plaintiff's application for an award of expenses.[4]

## II.    SUMMARY OF THE LITIGATION

This case was originally assigned to the Honorable Sharon Johnson Coleman and is currently pending before the Honorable John J. Tharp, Jr., in the United States District Court for the Northern District of Illinois (the "Court"). This case was brought on behalf of the Class (to be certified for settlement purposes) of all Persons who purchased or otherwise acquired the common stock of Baxter during the period from June 10, 2009 through and including May 3, 2010 (the "Class Period"). The initial complaint was filed on September 21, 2010, and on November 30, 2010, the Court appointed Lead Plaintiff and the firm Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On January 28, 2011, Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of the Federal Securities Laws, and on April 15, 2011, Lead Plaintiff filed the Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Complaint"). The Complaint alleged that during the Class Period, Defendants artificially inflated the Company's

---

[4]    As set forth in the ¶¶5 and 13 of the Judgment (Exhibit B to the Stipulation), the parties respectfully request that the Court dismiss this Action with prejudice but retain jurisdiction over: (a) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, interest, and expenses in the Action; and (d) all Settling Parties hereto for the purpose of construing, enforcing, and administering the Settlement Agreement. The parties are mindful of and have reviewed this Court's case management procedure regarding settlement. Lead Plaintiff proposed a draft judgment to Defendants that included a dismissal without prejudice for a period of 24 months that would automatically convert, absent further order of the Court, to a dismissal with prejudice. Defendants were unwilling to consent to entry of such a judgment.

stock price by knowingly or with severe recklessness making material misrepresentations and/or failing to disclose material facts concerning two specific issues: (1) the true status of remediation of the Company's Colleague infusion pump and compliance with the terms of the June 2006 Consent Decree entered into with the United States Food & Drug Administration regarding remediation of the Colleague pumps; and (2) the state of and outlook for Baxter's plasma-derivative products business. As a result, Lead Plaintiff alleges that Defendants' materially false and misleading statements and omissions artificially inflated Baxter's stock price and when the truth was eventually disclosed, the Class suffered substantial damages.

From the outset of the litigation, Defendants have denied all of these allegations and consistently maintained that they never made any statement to the market that was false or misleading, nor did they ever direct anyone to make public statements that were false and misleading. Defendants contend that Baxter's public statements were truthful, accurate, and not misleading. As a result, Defendants contend that Lead Plaintiff could not prove any element of securities fraud.

On May 27, 2011, Defendants filed their motion to dismiss the Action, alleging that Lead Plaintiff's Complaint failed to state a claim for relief. Lead Plaintiff filed its opposition on July 21, 2011, and Defendants filed their reply on August 11, 2011. On January 23, 2012, Judge Coleman entered an order granting in part, and denying in part, Defendants' motion to dismiss. The order sustained the allegations in the Complaint with one exception: statements "with respect to allegations that [Baxter] failed to disclose information related to the CSL and Talecris merger." On February 17, 2012, Defendants filed a motion to certify an interlocutory appeal pursuant to 28 U.S.C. §1292(b) and a motion to stay the proceedings pending a decision, which were both granted. Following briefing, on July 2, 2012, the Seventh Circuit Court of Appeals denied Defendants'

petition for an interlocutory appeal. Defendants filed their answer and separate defenses to the Complaint on August 27, 2012. On January 28, 2013, Lead Plaintiff filed its motion for class certification. On December 12, 2014, the parties completed supplemental class certification briefing on the issue of price impact.

On March 12, 2015, the Settling Parties participated in a full-day mediation session with Judge Phillips, who has extensive experience mediating complex class action litigations such as this Action. The parties ultimately agreed to settle the Action based upon a Mediator's Proposal issued by Judge Phillips.

## III.   TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves the claims of the Class against all Defendants. Lead Plaintiff and its counsel diligently and vigorously litigated this Action and, after arm's-length settlement negotiations, reached an agreement to settle this litigation for $42,500,000 in cash. Lead Plaintiff and its counsel concluded, after a thorough investigation of the factual and legal issues in the Action, as well as consideration of the expense and risks of continued litigation, that the substantial and certain monetary recovery obtained for the benefit of the Class is a highly favorable result under the circumstances and is in the best interests of members of the Class.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Proposed Settlement Meets the Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). This is especially true in complex class actions such as this:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." Settlement of the complex disputes often involved in class

> actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. Approval of a class action settlement under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See Manual for Complex Litigation* §13.14 (4th ed. 2004). At the Settlement Hearing, the Court will have before it more detailed papers submitted in support of final approval of the Settlement and only then will it be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate under all the circumstances. At this time, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement.

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the Settlement should be given to Class Members and a hearing scheduled to consider final settlement approval. *Manual for Complex Litigation*, *supra*, §13.14, at 173 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

The Settlement clearly satisfies the standard for approval. The Settlement provides an immediate and significant cash benefit to the Class, providing the sum of $42,500,000 for distribution to eligible Class Members. Both Lead Plaintiff and Defendants were fully prepared to continue to litigate rather than settle the Action for a sum either party deemed unreasonable. Indeed, the Settlement was only reached after zealous, arm's-length negotiations and acceptance of the

- 5 -

Mediator's Proposal, supporting a finding that the Settlement is fair. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014). Given the complexities of the Action and the substantial risks and uncertainties of continued litigation, Lead Counsel believe the Settlement represents a highly favorable resolution of the Action and eliminates the risk that the Class might not otherwise recover if litigation were to continue.

**B.      The Factors Considered When Granting Final Approval Also Support Preliminary Approval of the Proposed Settlement**

When granting final approval of a settlement, the courts consider:

"(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."

*Accretive*, 773 F.3d at 863 (citations omitted). "At the preliminary approval stage, however, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards . . . ." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-*33 (N.D. Ill. July 26, 2011) (citation omitted). A "summary" review of this criteria demonstrates that the proposed Settlement is clearly "'within the range of possible approval.'" *See id*. at *32 (citation omitted).

Lead Plaintiff, through its counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted, the likelihood of prevailing on these claims, the risk, expense and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail at trial, has concluded that the Settlement is not only fair, reasonable, and adequate but a highly favorable resolution of this complex action. Lead Counsel have significant experience in securities and other complex class

- 6 -

action litigation and have negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com. Lead Counsel's opinion that the Settlement is in the best interest of the Class weighs in favor of approval. *See Accretive*, 773 F.3d at 864 (noting as a relevant factor in affirming settlement approval that counsel – Robbins Geller – "are highly experienced"); *Isby*, 75 F.3d at 1200 (7th Cir. 1996) (the court placed significant weight on the opinion of plaintiffs' well-respected attorneys).

To ensure that a plaintiff has had access to sufficient information to evaluate both the case and the adequacy of the settlement, courts in the Seventh Circuit consider the stage of the proceedings and the discovery taken. *Isby*, 75 F.3d at 1196. Here, at the time Lead Plaintiff and Lead Counsel agreed to the settlement of this Action, both their knowledge and the proceedings themselves had reached a stage where they were able to make a highly informed and intelligent evaluation of the Action and propriety of the Settlement. Lead Counsel conducted extensive discovery, including the review of some four million pages of documents produced by Defendants and third parties, took or defended some 27 fact depositions, and completed expert discovery on loss causation and damages, including additional document production and depositions. Lead Counsel also participated in extensive settlement negotiations, including an all-day mediation session with Judge Phillips where Lead Plaintiff's claims and Defendants' defenses were fully vetted. Prior to the mediation, Lead Plaintiff and Defendants submitted to Judge Phillips and exchanged detailed mediation statements and replies, each supported by evidence further highlighting the factual and legal issues in dispute. Having sufficient information to properly evaluate the case, the Action was settled on terms highly favorable to the Class.

Although Lead Counsel believe that the Class' claims have substantial merit, and are confident that they would have prevailed on the claims asserted, they recognize the risks and

expense necessary to prosecute the Class' claims against Defendants through the completion of discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entail. Indeed, from the outset of the litigation, Defendants have denied all allegations and consistently maintained that they never made any statement to the market that was false or misleading, nor did they ever direct anyone to make public statements that were false and misleading. Defendants contend that Baxter's public statements were truthful, accurate, and not misleading. For example, Defendants would continue to argue that statements concerning Baxter's expectations for growth of its plasma-products business had a reasonable basis and Defendants' statements about Baxter's commitment to remediating its Colleague infusion pumps were truthful and accurate. Loss causation would be a pivotal issue going forward. Defendants would argue that Baxter's disclosures on April 22, 2010 and May 3, 2010, which Lead Plaintiff alleged were corrective disclosures that caused the Class substantial damages, were caused by factors other than the revelation of the alleged fraud. Defendants' loss causation arguments would be bolstered by the United States Supreme Court decision in *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005), which courts have recognized made proving loss causation even more difficult than in the past. *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult."). As a result, Defendants contend that Lead Plaintiff could not prove any element of the securities claims alleged.

Even if Lead Plaintiff was successful in proving liability, its ability to prove damages also presented a risk to recovery. *See Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The determination of damages is a complicated and uncertain process necessarily involving expert testimony. Here, each side retained experts to testify regarding damages. Defendants presented expert testimony that factors unrelated to the alleged fraud

- 8 -

caused the drop in the price of Baxter's common stock, thus arguing that these other factors negated or severely reduced the claimed damages. Lead Plaintiff would have likely faced a motion *in limine* by Defendants to preclude its damage expert's testimony under the *Daubert* test and risked a decision that some or all of the opinion might not be admissible in evidence. Even if Lead Plaintiff survived the *Daubert* motion, at trial the damage assessments of Lead Plaintiff's and Defendants' experts would vary substantially, and, in the end, this crucial element would be reduced to a "battle of the experts." In such a battle, "[t]here can be no certainty as to which experts a jury would find more persuasive [and] the [damages] issue would be both complex and hotly contested, requiring expert testimony on sophisticated methodologies with uncertain results." *Heekin v. Anthem, Inc*., No. 1:05-CV-01908-TWP-TAB, 2012 WL 5472087, at *5 (S.D. Ind. Nov. 9, 2012).

In short, while Lead Plaintiff and its counsel believe that the claims asserted have merit, if the Action continued, Lead Plaintiff and the Class would bear the risks of establishing liability and damage issues that have been and would continue to be vigorously challenged by Defendants. Absent settlement, this contest would have ultimately developed into a battle of competing facts and inferences, competing experts, and a credibility toss-up to be decided by the jury.[5] By contrast, the $42,500,000 Settlement is immediately realizable by the Class and eliminates all of these risks. Importantly, an evaluation of the benefits of settlement must also be tempered by a recognition that

---

[5] Moreover, even a meritorious case can be dismissed at or reversed after trial. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015) (after 13 years of litigation, and six years after a favorable jury verdict, the Seventh Circuit ruled that defendants are entitled to a new trial primarily on the issue of loss causation); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW(EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict for defendants). Further, a successful jury verdict does not eliminate the risk to the class. *See Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *4 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

any compromise involves concessions on the part of all of the settling parties. Indeed, the "'essence of settlement is compromise.'" *Isby*, 75 F.3d at 1200 (quoting *Armstrong*, 616 F.2d at 315).

While Lead Plaintiff believes the Settlement merits final approval, the Court need not make that determination now. The Court is being asked to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any expressed views by Class Members about the fairness of the Settlement, the Plan of Allocation, Lead Counsel's request for an award of fees and expenses, and Lead Plaintiff's expense request. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.162[3] (3d ed. 2013).

## V.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Part of the settlement approval process is to determine whether the action may be maintained as a class action for settlement purposes under Fed. R. Civ. P. 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation. *See id.* at 613. In addition, the Class must meet one of the three requirements of Rule 23(b). The Seventh Circuit has acknowledged that Rule 23 must be liberally construed in this context: "Its policy is to favor maintenance of class actions. This policy operates just as surely in cases where securities fraud is charged. It is especially strong in instances where denial of class status would effectively terminate further litigation of the securities fraud claims." *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975); *see also Roth v. Aon Corp.*, 238 F.R.D. 603, 605 (N.D. Ill. 2006) ("It is established law in the Northern District of Illinois and the Seventh Circuit that class certifications are the preferred method of dealing with securities fraud cases."). As detailed below, Lead Plaintiff demonstrates that the Class satisfies Rule 23's requirements.

- 10 -

### A. Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are thousands of potential Class Members, which is more than sufficient to find that joinder of all parties is impracticable under Rule 23(a)(1). Further, during the Class Period, Baxter's common stock was listed and actively traded on the New York Stock Exchange, an open and efficient market. "[I]n securities fraud suits involving nationally traded securities, numerosity may be assumed." *In re Sys. Software Assocs., Inc. Sec. Litig.*, No. 97 C 177, 2000 U.S. Dist. LEXIS 18285, at \*5 (N.D. Ill. Dec. 8, 2000); *see also In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (numerosity satisfied where company's shares traded on NASDAQ, such that it could be "reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class"); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 U.S. Dist. LEXIS 9982, at \*15-\*16 (N.D. Ill. June 13, 2003) (certifying class where company's shares "were likely owned by hundreds of persons or entities throughout the United States"). Here, according to Baxter's SEC filings as of March 31, 2010 (shortly before the end of the Class Period) Baxter had approximately 600 million shares of common stock outstanding. In addition, the average trading volume of Baxter common stock during the Class Period exceeded 4.6 million shares, which further supports a finding of numerosity.

### B. Rule 23(a)(2) – Commonality

Rule 23(a)(2) is satisfied where there are questions of law or fact common to the class. Complete identity of a named plaintiff's claims with those of the class is not required. *See In re Hartmarx Sec. Litig.*, No. 01 C 7832, 2002 U.S. Dist. LEXIS 18273, at \*10 (N.D. Ill. Sept. 19, 2002). The commonality requirement is usually satisfied when "[a] common nucleus of operative fact" unites a class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Rule 23(a)(2) commonality 'is not a demanding requirement; one issue of fact or law common to all class members

- 11 -

will suffice.'" *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022, at *9 (N.D. Ill. Aug. 27, 2002) (citation omitted). Common questions of law and fact clearly predominate in this Action. Here, the overarching question applicable to all Class Members is whether the Defendants made misrepresentations or omitted information necessary to be disclosed, and whether the alleged misrepresentations or omissions were material. *See Tatz*, 2003 U.S. Dist. LEXIS 9982, at *17 (certifying a class where common questions included whether the federal securities laws were violated by the defendants' acts and omissions, and whether the defendants participated in and pursued the common course of conduct). Securities fraud actions alleging such common questions consistently are considered prime candidates for class certification. *See, e.g.*, *Roth*, 238 F.R.D. at 605. The common legal and factual questions here more than satisfy the low hurdle of commonality.

C.     **Rule 23(a)(3) – Typicality**

The typicality requirement of Rule 23(a)(3) is satisfied because Lead Plaintiff's claims arise from the same "'event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation omitted). Here, Lead Plaintiff's claims are typical of other Class Members' claims because it purchased or acquired Baxter common stock on the open market during the Class Period, is a member of the Class it seeks to represent, and thus has the same claims as those alleged on behalf of the Class. Additionally, Lead Plaintiff and other members of the Class allege that Defendants' dissemination of materially false and misleading public information, which artificially inflated the price of Baxter common stock throughout the Class Period, caused harm once revealed. Moreover, Lead Plaintiff's claims, like the Class' claims, are premised on the same legal theory – Defendants' alleged violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. Accordingly, typicality is satisfied. *See Software*

- 12 -

*Assocs.*, 2000 U.S. Dist. LEXIS 18285, at *5-*6 (granting class certification where plaintiffs' claims arose from the same "course of action that g[ave] rise to the claims of other class members and . . . [we]re based on the same legal theory").

### D. Rule 23(a)(4) – Adequacy of Representation

Lead Plaintiff meets the "adequacy" requirement of Rule 23. Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *accord Rosario*, 963 F.2d at 1018. The adequacy requirements of Rule 23(a)(4) will be met where: (i) the claims of the class representatives and other members of the class are not antagonistic; (ii) the class representatives are sufficiently interested in the outcome of the case; and (iii) experienced, competent counsel represent them. *See Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009). Here, Lead Plaintiff satisfies all three prongs of the adequacy test of Rule 23(a)(4) for the Class.

First, Lead Plaintiff has no interests antagonistic to the interests of the Class, as Lead Plaintiff is a member of the Class and suffered the same type of alleged economic damages as the other Class Members. Second, Lead Plaintiff purchased 102,800 shares of Baxter common stock during the Class Period, and suffered losses in excess of $1.5 million. Thus, Lead Plaintiff has more than sufficient interest in the outcome of the case. Lead Plaintiff has already demonstrated its vigorous prosecution of the claims brought in this Action on behalf of itself and the Class by conducting an extensive investigation into Defendants' alleged fraud, shepherding the Complaint past Defendants' motion to dismiss and for interlocutory appeal, aggressively pursuing discovery, and participating in extensive settlement negotiations. Third, Lead Plaintiff retained attorneys highly qualified, experienced, and able to successfully conduct this litigation. Lead Counsel have extensive experience, indeed they are at the forefront nationally, in litigating complex class actions. Given the

- 13 -

lack of conflict, its interest in the outcome of this case, and its retention of highly experienced and competent counsel, Lead Plaintiff is an adequate class representative here.

### E. The Class May Be Properly Certified Under Rule 23(b)(3)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. Both of these requirements are satisfied here.

The predominance inquiry focuses on the existence of common issues. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." 521 U.S. at 625. In this case, as in most cases alleging violations of the Exchange Act, "[w]hether [defendants'] statements are false . . . [w]hether the false-hoods are intentional . . . [w]hether the false-hoods affected the stock's price . . . [and] [w]hether the magnitude of any effect shows that the false information was 'material'" are common questions which predominate over any individual issues. *Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010); *see also Motorola*, 259 F.R.D. at 174 (holding in securities fraud case that common issues predominated over those pertaining to individual shareholders); *Software Assocs.*, 2000 U.S. Dist. LEXIS 18285, at *11, 2000 WL 1810085, at *3-*4. ("The principal issues of law and fact relate to defendants' alleged misrepresentations. These issues are common to the members of the class and predominate over any questions affecting only individual members.").

Further, resolution of this case through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action could exceed the individual's loss. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action device permits pooling of claims where it would be uneconomical to litigate individually); *In re*

- 14 -

*Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2014 U.S. Dist. LEXIS 137382, at *9 (N.D. Ill. Sept. 23, 2014) (finding class action superior in securities fraud suit).[6]

In sum, Lead Plaintiff believes that the Class meets all of the requirements of Rule 23(a) and (b)(3) and should be certified in conjunction with the Settlement.[7]

## VI. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed settlement). Here, the parties negotiated the form of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses have been or can be identified from or through Baxter's transfer records. In addition, the Claims Administrator will engage in an extensive outreach to send the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities. The Court is respectively referred to the Declaration of Peter Crudo Regarding Notice and Administration, which is being filed concurrently for a detailed description of the notice procedure. The parties further propose to supplement the mailed Notice with a Summary Notice published in *Investor's Business Daily* and transmitted over the *PR Newswire*. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

---

[6]    Defendants reserve their right to contest the foregoing outside the settlement context, including on manageability grounds. As the Supreme Court held in *Amchem*, however, manageability need not be considered in addressing a proposed settlement, since the claims being settled will obviously not be litigated or tried. *See Amchem*, 521 U.S. at 620.

[7]    Moreover, and as demonstrated throughout this case, Lead Counsel satisfy the requirements of Rule 23(g).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees not to exceed 26% of the Settlement Amount and expenses not to exceed $1,350,000, plus interest, to be paid from the Settlement Fund. *See* Exhibit A-1 to the Stipulation, at Question 17.

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7). The Notice includes all of the information required by the PSLRA, as well as additional relevant information.

The proposed form of notice describes the Settlement and sets forth the Settlement Amount ($42,500,000) and the average distribution per damaged share if claims for 100% of such shares are made ($0.18/share); states the parties' disagreement over damages and liability; sets out the amount of attorneys' fees and expenses (in the aggregate and on a per share basis) ($0.05/share) that Lead

Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation. In addition, the Notice briefly explains the nature, history and status of the Action; sets forth the definition of the Class; states the Class' claims and issues; discusses the rights of persons who fall within the definition of the Class; and summarizes the reasons the parties are proposing the Settlement.

Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Class. For those Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice. The Summary Notice also informs Class Members that copies of the Notice and Proof of Claim and Release form may be obtained by writing the Claims Administrator, or by accessing the documents on the case specific website described in the Notice.

Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures for commenting on the Settlement and includes the postal address for the Court, Lead Counsel, and counsel for Defendants.

The contents of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests that the Court also approve the parties' proposed form and method of giving notice to the Class.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for requesting exclusion from the Class, objecting to the Settlement, the Plan of Allocation of settlement proceeds, or the application for fees and expenses, filing papers in support of the Settlement, Plan of

Allocation of settlement proceeds, and fee and expense application, and the submission of Proof of Claim and Release forms. Lead Plaintiff proposes the following schedule:

| Notice mailed to Class ("Notice Date") | 21 days after entry of the Notice Order |
|---|---|
| Summary Notice published | 10 days after the Notice Date |
| Deadline for filing initial papers in support of the Settlement, Plan of Allocation of settlement proceeds, or request for an award of attorneys' fees and expenses | 14 days prior to the deadline for objections |
| Deadline for objecting to the Settlement, Plan of Allocation of settlement proceeds, or request for an award of attorneys' fees and expenses | 60 days after the Notice Date |
| Deadline for requesting exclusion from the Class | 60 days after the Notice Date |
| Deadline for filing reply papers in support of the Settlement, Plan of Allocation of settlement proceeds, or request for an award of attorneys' fees and expenses | 10 days prior to the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, but no earlier than 90 days after the Notice Date |
| Last day for submitting Proof of Claim and Release forms | 90 days after the Notice Date or such other time as set by the Court |

## VIII. CONCLUSION

For all the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval and the Notice Order should be entered.

DATED:  August 11, 2015

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
KATHLEEN B. DOUGLAS
HOLLY W. KIMMEL
JANINE D. ARNO

s/ Robert J. Robbins
ROBERT J. ROBBINS

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
TOR GRONBORG
JONAH H. GOLDSTEIN
JASON A. FORGE
JEFFREY D. LIGHT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW E. VAN TINE
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel for Lead Plaintiff

1059292_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 11, 2015.

s/ Robert J. Robbins
ROBERT J. ROBBINS

ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

E-mail: rrobbins@rgrdlaw.com

## Mailing Information for a Case 1:10-cv-06016 City of Lakeland Employees Pension Plan v. Baxter International Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Janine D Arno**
  e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A Burkholz**
  spenceb@rgrdlaw.com

- **Kathleen Barber Douglas**
  kdouglas@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Jason Adeeb Forge**
  jforge@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Michael Jerry Freed**
  mfreed@fklmlaw.com,mkhamoo@fklmlaw.com

- **Andrew J Fuchs**
  afuchs@skadden.com,chdocket@skadden.com

- **Jonah Harry Goldstein**
  jonahg@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Thomas Heffner**
  mheffner@heffnerhurst.com,mhurst@heffnerhurst.com

- **Bailie Heikkinen**
  bheikkinen@rgrdlaw.com

- **Steven A Kanner**
  skanner@fklmlaw.com

- **Holly Wiseberg Kimmel**
  hkimmel@rgrdlaw.com

- **Matthew Robert Kipp**
  mkipp@skadden.com,chdocket@skadden.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Donna L. McDevitt**
  dmcdevit@skadden.com,chdocket@skadden.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Amelia Susan Newton**
  newton@laskyrifkind.com

- **Norman Rifkind**
  rifkind@laskyrifkind.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,cthornton@rgrdlaw.com,hkimmel@rgrdlaw.com,e_file_fl@rgrdlaw.com,ckent@rgrdlaw.com

- **Donald Lewis Sawyer**
  dsawyer@fklmlaw.com,mkhamoo@fklmlaw.com

Case: 1:10-cv-06016 Document #: 277 Filed: 08/11/15 Page 28 of 28 PageID #:6089

- **Judith S. Scolnick**
  jscolnick@scott-scott.com,mschwartz@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Martin Vincent Sinclair**
  martin.sinclair@skadden.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`