UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>    vs.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>                    Defendants. | Case No. 1:10-cv-06016<br><br>CLASS ACTION<br><br>Assigned to: Judge John J. Tharp, Jr. |

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    STANDARD FOR JUDICIAL APPROVAL OF A CLASS ACTION
SETTLEMENT...........................................................................................................3

III.   THE SETTLEMENT MEETS THE SEVENTH CIRCUIT STANDARD FOR
APPROVAL ...............................................................................................................5

      A.     The Strength of Lead Plaintiff's Case Compared to the Amount of the
Settlement .......................................................................................................5

      B.     The Complexity, Length, and Expense of Further Litigation Supports
Approval of the Settlement ...........................................................................10

      C.     The Reaction of Class Members Supports the Settlement....................................12

      D.     Lead Counsel Endorses the Settlement.................................................................13

      E.     The Stage of the Proceedings and the Amount of Discovery Completed.............14

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................14

V.    CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265
(N.D. Ill. Feb. 28, 2012).......................................................................................13

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..............................................................................9

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) .............................................................................4, 5

*City of Greenville v. Syngenta*,
904 F. Supp. 2d 902 (S.D. Ill. 2012)....................................................................15

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................6

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) .................................................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................3, 11

*Goldsmith v. Tech. Solutions Co.*,
No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093
(N.D. Ill. Oct. 10, 1995).........................................................................................8

*Heekin v. Anthem, Inc.*,
No. 1:05-cv-01908-TWP, 2012 U.S. Dist. LEXIS 160864
(S.D. Ind. Nov. 9, 2012)..........................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ................................................................................9

*In re Apple Computer Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
(N.D. Cal. Sept. 6, 1991) .........................................................................................9

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) .......................................................... *passim*

*In re Delphi Corp. Sec.*,
248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................1, 10

**Page**

*In re Harnischfeger Indus., Inc.*,
212 F.R.D. 400 (E.D. Wis. 2002) ......................................................................4, 14

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ..................................................................................9

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...............................................................7

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...............................................................3, 10, 13, 14

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................12

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
834 F.2d 677 (7th Cir. 1987) ...........................................................................4

*Meyenburg v. Exxon Mobil Corp.*,
No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057
(S.D. Ill. June 5, 2006) ....................................................................................13

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397
(N.D. Ill. Dec. 10, 2001) ..............................................................................10, 14

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ...........................................................................11

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) .........................................................................9

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................6

*Swift v. Direct Buy, Inc.*,
No. 2:11-CV-401-TLS, 2013 U.S. Dist. LEXIS 152618
(N.D. Ind. Oct. 24, 2013) ...............................................................................12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ...........................................................................4

- iii -

**Page**

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ...........................................................................................4

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ......................................................................................4, 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b) ................................................................................................................................6

28 U.S.C.
  §1292(b) .............................................................................................................................2

Federal Rules of Civil Procedure
  Rule 23 ........................................................................................................................13, 14
  Rule 23(c)(1)(C) ................................................................................................................6
  Rule 23(e)(2) .....................................................................................................................4

**SECONDARY AUTHORITY**

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2004)
  §23.164[4] ........................................................................................................................13

## I.      INTRODUCTION

Lead Plaintiff, National Elevator Industry Pension Fund ("Lead Plaintiff"), respectfully submits this memorandum of points and authorities in support of its motion for final approval of the settlement of this Action (the "Settlement") for cash consideration in the amount of $42,500,000, and for approval of the Plan of Allocation of Settlement proceeds.  The terms of the Settlement are set forth in the Amended Settlement Agreement, dated August 27, 2015 (the "Settlement Agreement"), which was filed with the Court on September 16, 2015 (Dkt. No. 292).[1]  The Settlement is the result of Lead Counsel's extensive litigation efforts and well-informed arm's-length settlement negotiations between highly experienced counsel with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a highly respected and experienced mediator of complex class actions.[2] Lead Plaintiff and its counsel firmly believe that the Settlement is an excellent result for the Class under the circumstances and therefore merits the Court's approval.

This case was zealously litigated from its commencement up to the time it settled. Defendants have repeatedly expressed their belief that Lead Plaintiff could not prevail on the claims asserted and have fought Lead Plaintiff at nearly every stage of the Action.  The Settlement was not achieved until Lead Counsel, *inter alia*: (a) conducted an extensive investigation into the underlying facts; (b) thoroughly researched the factual and legal issues pertinent to the Class Members' claims and Defendants' possible defenses; (c) prepared and filed the detailed Amended Consolidated Class Action Complaint ("Amended Complaint") specifying Defendants' violations of the federal securities laws; (d) successfully opposed Defendants' motion to dismiss the Amended Complaint

---

[1]     Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Settlement Agreement.

[2]     *See, e.g.*, *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14  (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of [this] former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

- 1 -

and subsequent interlocutory appeal pursuant to 28 U.S.C. §1292(b); (e) conducted extensive fact discovery; (f) conducted broad merits discovery, which included the review and analysis of millions of pages of documents produced by Defendants and third parties, the exchange of multiple sets of interrogatories, and preparation for and the taking of depositions of 27 fact witnesses; (g) briefed Defendants' motion to compel documents from Lead Plaintiff and Lead Plaintiff's two non-testifying consultants; (h) engaged in exhaustive expert discovery that involved both class certification and merits issues; (i) prepared Lead Plaintiff's motion for class certification; (j) prepared additional briefing in support of class certification on the issue of price impact; (k) prepared an in-depth mediation statement that analyzed the merits of Lead Plaintiff's claims and the defenses available to Defendants; and (l) consulted with experts to fully evaluate the strength of Lead Plaintiff's claims and Defendants' defenses.[3]

The parties ultimately entered into settlement negotiations, which were protracted and at arm's length. The settlement negotiations included an extensive in-person mediation session before Judge Phillips, as well as subsequent settlement discussions by telephone and email, which were further mediated by Judge Phillips. During settlement negotiations, Lead Counsel made it clear that while it was prepared to fairly assess the strengths and weaknesses of Lead Plaintiff's case, it would continue to litigate (and, in fact, did) rather than settle for less than fair value. The Settlement was reached at a time when Lead Counsel and Lead Plaintiff were fully cognizant of the strengths and weaknesses of the case, and the specific risks and uncertainties of continued litigation.

The $42.5 million Settlement provides the Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. If not for this Settlement, the case would

---

[3]    The efforts of counsel in prosecuting the Action and achieving this Settlement are set forth in greater detail in the accompanying Declaration of Robert J. Robbins in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses (the "Robbins Decl.").

likely remain fiercely contested by the parties with the ultimate outcome uncertain. Lead Counsel, who is well-respected and has substantial experience in prosecuting securities fraud class actions, has concluded that the Settlement is a very good result for the Class. This conclusion is based on all the circumstances present here, including the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, the likelihood of obtaining a larger judgment after trial and the recoverability of that judgment, and past experience in litigating complex actions similar to the present action. Even if Lead Plaintiff was successful at trial and on the inevitable post-trial appeals, the uncertain recovery would have been years down the road. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) ("*Household*") (remanding for retrial on limited issues of case filed in 2001 and tried by Robbins Geller in 2009). Lead Plaintiff, an institutional investor, was actively involved in the prosecution of the Action throughout its pendency, including settlement negotiations, also believes that the Settlement is in the best interest of the Class. Robbins Decl., ¶51.

For all the reasons discussed herein and in the Robbins Declaration, Lead Plaintiff respectfully submits that the Settlement is an excellent result for the Class and should be approved by the Court. Likewise, the Plan of Allocation of Settlement proceeds, which was set forth in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice") and developed by Lead Counsel and its damages consultants, is fair, reasonable, and adequate, and should be approved by the Court.

## II. STANDARD FOR JUDICIAL APPROVAL OF A CLASS ACTION SETTLEMENT

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985).

- 3 -

"A district court may approve a class action settlement if it finds it to be fair, adequate, and reasonable." *Wong v. Accretive Health, Inc*., 773 F.3d 859, 862 (7th Cir. 2014) (citing Fed. R. Civ. P. 23(e)(2)); *see also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011). Courts in this Circuit consider the following factors in evaluating the fairness of a class action settlement: (1) the strength of plaintiffs' case compared to the amount of the settlement; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the opinions of counsel; and (5) the stage of the proceedings and amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

The proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). Therefore, the judgment of the litigants and their counsel should be given deference and the court is not required to substitute its own judgment for the judgment of the litigants and their counsel. As the Seventh Circuit has written:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980).

Finally, a "strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's-length] negotiation." *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002); *see also Accretive*, 773 F.3d at 864 (noting as an "important[]" factor in affirming settlement that "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation"). Here, the Settlement was negotiated at arm's length with the substantial assistance of Judge Phillips. Moreover, the attorneys who conducted the settlement negotiations for the Class have many years of experience in litigating complex securities cases, and

- 4 -

were thoroughly conversant with the strengths and weaknesses of the case, as a result of their extensive litigation efforts during the course of the Action. Both Lead Plaintiff and Defendants were fully prepared to continue to litigate rather than settle the Action for a sum either party deemed unreasonable. Counsel's decision, therefore, should be given deference. *See Armstrong*, 616 F.2d at 315.

As explained below and in the Robbins Declaration, when examined under the applicable criteria and given the circumstances present, the Settlement is an excellent result for the Class and warrants approval by the Court. Robbins Decl., ¶5. Lead Counsel believes that there are serious questions as to whether a more favorable result could or would be attained after continued litigation and the inevitable post-trial motions and appeals. *Id.* The Settlement achieves a substantial recovery for Class Members and is unquestionably superior to the possibility that, were this Action to proceed to trial and subsequent appeals, there might be no recovery at all.

## III. THE SETTLEMENT MEETS THE SEVENTH CIRCUIT STANDARD FOR APPROVAL

### A. The Strength of Lead Plaintiff's Case Compared to the Amount of the Settlement

The "'strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" supports final approval. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 963-64 (N.D. Ill. 2011). Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *Id.* at 959, 961, 963-64. The $42.5 million recovery obtained for the benefit of the Class here is well within the range of reasonableness in light of the legal, factual, and practical risks of continued litigation. As discussed in more detail in the Amended Memorandum of Points and Authorities in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 287),

- 5 -

the $42.5 million recovery compares favorably to amounts recovered in similar cases as well as the amounts that could have been potentially proven at trial.

Setting aside Defendants' arguments on the merits, Lead Plaintiff and the Class faced a "contested class certification proceeding" that was pending at the time of settlement with no guarantee that it would be granted. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011). Even if the Court granted Lead Plaintiff's motion for class certification, there was no assurance of maintaining class status throughout the Action, as courts may exercise their discretion to decertify a class at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C).

Lead Plaintiff also faced substantial risks in proving the Class' claims against Defendants. While Lead Plaintiff believes that it had uncovered evidence to establish liability, a finding in the Class' favor by a jury or fact finder was never assured. In order to prevail on its §10(b) claim, Lead Plaintiff would have the burden of demonstrating to the satisfaction of the jury and the Court that: (1) Defendants made false statements or omissions, (2) of material fact, (3) with scienter, (4) in connection with the purchase of Baxter International Inc. ("Baxter" or the "Company") common stock, (5) upon which the Class justifiably relied, and (6) that the false statements proximately caused the Class' damages, *i.e.*, loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Lead Plaintiff and its counsel believe that based on the evidence adduced to date, the claims asserted have substantial merit and that they would be able to establish that statements alleged to be false were in fact material misstatements or omissions, made with scienter, and caused the Class damage. Defendants, however, have adamantly denied any culpability and raised potentially valid defenses to Lead Plaintiff's claims that presented risks to a class recovery if the Action continued. For example, with respect to the Colleague allegations, Defendants would have argued at trial that at all

- 6 -

times the Company was attempting to comply with the terms of the Consent Decree and the FDA's additional request for a clinical evaluation and contrary to Lead Plaintiff's allegations, Baxter kept investors informed about the status of the Company's remediation efforts. Robbins Decl., ¶56.

Defendants would continue to argue that Lead Plaintiff's plasma allegations had no merit because: (i) Baxter's Class Period statements about its long-term expectations for growth of its plasma-products business had a reasonable basis; (ii) Baxter's 2009 sales guidance for its BioScience segment and plasma-products business had a reasonable basis when issued on January 22, 2009, and also had a reasonable basis when Baxter raised its 2009 guidance on July 16, 2009; (iii) Baxter achieved its raised 2009 guidance; and (iv) Baxter's 2010 sales growth guidance for its BioScience segment and plasma-products business had a reasonable basis when issued on January 28, 2010. *Id.*, ¶58.

Defendants would also continue to argue that Lead Plaintiff could not prove Defendants made any false and misleading statements with the requisite scienter. *Id.*, ¶60. A defendant's state of mind in a securities case is often the most difficult element to prove and one which is rarely supported by direct evidence such as an admission. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). In Defendants' view, the statements were truthful when made. Moreover, at summary judgment and at trial, while motive is not required to prove scienter, it is a factor and Defendants would argue they lacked any clear motive for them to engage in a fraud to inflate Baxter's stock price because during the Class Period none of the Individual Defendants sold Baxter common stock, Baxter was not engaged in any corporate transactions in which its stock was used as a currency, and the Company was engaged in a stock repurchase program, thus negating any inference of scienter.

While Lead Plaintiff believes that it would have prevailed on the claims asserted, there is no guarantee of success and the Settlement provides a highly favorable recovery for the Class. If the

1093755_3

Action had proceeded to trial, Defendants would have presented evidence in support of their contentions that may have found favor with the Court at summary judgment or the jury at trial. There could be no way of predicting which interpretations, inferences, or testimony the Court or a jury would accept. The Court or a jury could have sided with Defendants on some or all of the issues. If the Court or jury sided with Defendants on even one of their defenses, the Class could recover nothing.

Even if Lead Plaintiff was successful in proving liability, its ability to prove damages and loss causation also presented a significant risk to recovery. *See Goldsmith v. Tech. Solutions Co*., No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *13 (N.D. Ill. Oct. 10, 1995). Defendants aggressively challenged loss causation and damages during expert discovery. Defendants engaged Professor Allen Ferrell, Ph.D., to analyze the economic evidence as it related to Lead Plaintiff's claims in the Amended Complaint and Lead Plaintiff's expert report prepared by Professor Steven P. Feinstein, Ph.D., CFA. Robbins Decl., ¶62. If this Action proceeded to summary judgment and trial, Defendants would argue that Lead Plaintiff's two corrective disclosures did not relate to any of the alleged misstatements or omissions during the Class Period and, therefore, the stock drop was unrelated to the fraud. *Id.* They would have further asserted that other information caused Baxter's stock to decline, that the weakening state of the plasma market was known to analysts and investors, that an unanticipated FDA recall cannot support loss causation, and that Professor Feinstein's damages attribution analysis did not sufficiently account for these confounding factors.

While Lead Plaintiff and Lead Counsel believed their expert would survive any *Daubert* challenge and would be more convincing than Defendant's expert, there were substantial risks. The determination of damages is also a complicated and uncertain process necessarily involving expert testimony and with few cases having been successfully tried to verdict and through appeal. If

- 8 -

litigation continued, each side's experts would testify regarding damages with polar opposite views. In these cases, defendants inevitably file a motion *in limine* seeking to preclude plaintiff's expert's testimony under the *Daubert* test and plaintiff risks a decision that some or all of the opinion might not be admissible in evidence. Even if Lead Plaintiff survived the *Daubert* motion, at trial the damage assessments of Lead Plaintiff's and Defendants' experts would vary substantially, and, in the end, this crucial element would be reduced to a "battle of the experts." In such a battle, "[t]here can be no certainty as to which experts a jury would find more persuasive . . . the [damages] issue would be both complex and hotly contested, requiring expert testimony on sophisticated methodologies with uncertain results." *Heekin v. Anthem, Inc*., No. 1:05-cv-01908-TWP, 2012 U.S. Dist. LEXIS 160864, at *17 (S.D. Ind. Nov. 9, 2012).

Even if Lead Plaintiff prevailed and obtained a substantial judgment after trial, there is little doubt that Defendants would have filed post-trial motions and/or appeals which raised two significant risks for the Class. First, they would receive nothing during the post-trial motions and appeals process which would have likely spanned several years. Second, they could ultimately receive no recovery despite prevailing at trial given that post-trial motions or appeals of any verdict carries the risk of reversal.[4] Finally, even with a judgment in hand, and given Baxter's apparently strong financial health today, there is no guarantee that a significant judgment entered years down the road would be collectable.

---

[4]     *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW(EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict for defendants). Further, a successful jury verdict does not eliminate the risk to the class. *See Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *4 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

In short, while Lead Plaintiff and its counsel believe that the claims asserted have merit, if the Action continued, Lead Plaintiff and the Class would bear the risks of proving liability and damage issues that would have been vigorously challenged by Defendants at summary judgment and trial. *See Delphi*, 248 F.R.D. at 496 (discussing the "risk that Defendants could prevail with respect to certain legal or factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries"). Absent settlement, this contest would have ultimately developed into a battle of competing facts and inferences, competing experts, and a credibility toss-up to be decided by the jury. By contrast, the $42.5 million Settlement is immediately realizable by the Class and eliminates all of these risks.

## B. The Complexity, Length, and Expense of Further Litigation Supports Approval of the Settlement

In determining the fairness of a settlement, courts also consider "the likely complexity, length and expense of the litigation." *Isby*, 75 F.3d at 1199. There is no doubt that this securities class action involves complex factual and legal issues. Courts have long recognized that "[s]ecurities fraud litigation is long, complex and uncertain." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *5 (N.D. Ill. Dec. 10, 2001) (collecting cases). This securities fraud case was no different.

If not for this Settlement, the case would have been fiercely contested by Defendants. The expense of continuing litigation would be substantial. While fact and expert discovery were nearly complete, inevitably, Defendants would have filed motion(s) for summary judgment. Assuming Lead Plaintiff's claims survived summary judgment, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued. Further, significant amounts of time would have been expended in preparing the case for trial. Lead Plaintiff was certainly not guaranteed victory at trial, but even if the Class were to recover a larger

judgment after trial, the additional delay, through post-trial motions and appeals, would deny the Class any recovery for years. *See AT&T Mobility*, 789 F. Supp. 2d at 961 ("Were the Class Members required to await the outcome of a trial and inevitable appeal . . . they would not receive benefits for many years, if indeed they received any at all."). There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation.

A good example of the risks and delays inherent in securities litigation, even after a jury verdict in favor of the class is *Household*. In *Household*, a large securities class action case filed in 2002 that was prosecuted by Robbins Geller and tried before Judge Guzman, plaintiffs obtained a jury verdict in their favor on May 7, 2009 after a month-long trial and seven years of costly and contentious litigation. Because of post-verdict challenges, a judgment of $2.46 billion was not entered until October 17, 2013, which was then appealed. After 13 years of litigation, and six years after a favorable jury verdict, the Seventh Circuit vacated the judgment on May 21, 2015 and held that the defendants are entitled to a new trial on certain limited issues. A new trial is currently scheduled for June 6, 2016. As a result, although the jury's finding that defendants made false statements with scienter is intact, not a single class member has received a penny from the defendants and defendants have been able to delay recovery for over a decade and counting. Here, as in *Household*, Lead Plaintiff could not be certain that it could promptly collect on a post-trial monetary judgment even if it did reach and prevail at trial.

The $42.5 million Settlement, at this juncture, results in an immediate, substantial, and tangible recovery. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). Consideration of this factor supports approval of the Settlement.

### C.      The Reaction of Class Members Supports the Settlement

To further support approval of a settlement, courts look to the class' reaction to the settlement. *AT&T Mobility*, 789 F. Supp. 2d at 958. Of course, the fact that some class members object to a settlement does not by itself prevent the court from approving the agreement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in which courts approved settlements despite objections). A relatively small number of class member objections, or no objections, is an indication of a settlement's fairness. *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 U.S. Dist. LEXIS 152618, at *12 (N.D. Ind. Oct. 24, 2013).

Pursuant to the Court's September 18, 2015 Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), the Court-approved Claims Administrator, Gilardi & Co. LLC ("Gilardi"), has mailed over 392,700 copies of the Notice and Proof of Claim and Release to potential Class Members and nominees.[5] In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on October 15, 2015. Sylvester Decl., ¶14. Gilardi also caused the Notice, Proof of Claim and Release, Settlement Agreement, and Notice Order to be posted on the website specifically established for the Settlement (www.baxtersecuritiessettlement.com), which was identified in the Notice and Summary Notice. *Id.*, ¶13.

The Notice advised Class Members of their right to object to the terms of the Settlement, Plan of Allocation, and request for attorneys' fees and expenses and explained that this right needed to be exercised by December 18, 2015. While the time for objecting has not yet expired, to date, no Class Member has objected to the Settlement, the Plan of Allocation, or the request for an award of

---

[5]     *See* Declaration of Carole K. Sylvester Regarding (A) Mailing of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing and the Proof of Claim and Release Form, (B) Publication of the Summary Notice, (C) Internet Posting, and (D) Requests for Exclusion Received to Date ("Sylvester Decl."), ¶¶4-11, submitted herewith.

attorneys' fees and expenses, and only six exclusion requests have been received by the Claims Administrator. *Id.*, ¶15.[6]

### D.    Lead Counsel Endorses the Settlement

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *AT&T Mobility*, 789 F. Supp. 2d at 965; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265, at *33 (N.D. Ill. Feb. 28, 2012).  Indeed, courts should place "significant weight" on counsel's "unanimously strong endorsement" of the settlement. *Meyenburg v. Exxon Mobil Corp*., No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057, at *18 (S.D. Ill. June 5, 2006).

This case has been litigated and settled by experienced and competent counsel on both sides of the case.  Lead Counsel is well known for its experience and success in complex class action litigations and has many years of experience in litigating securities fraud class actions.[7]  Based on its extensive experience and expertise, Lead Counsel has determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of the Settlement against the numerous obstacles to obtaining a better recovery after continued litigation.  Lead Counsel's opinion that the Settlement is in the best interest of the Class weighs in favor of approval.  *See Accretive*, 773 F.3d at 864 (noting as a relevant factor in affirming settlement approval that counsel – Robbins Geller – "are highly experienced"); *Isby*, 75 F.3d at 1200 (the court placed significant weight on the opinion of plaintiffs' well-respected attorneys).  The recommendations of experienced and qualified counsel favor approval of the Settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.164[4], at 23-509 (3d ed.

---

[6]    In accordance with the Court's September 18, 2015 Notice Order, counsel will respond to any objections on or before January 12, 2016.

[7]    *See* Exhibit G to the accompanying Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses for a description of Lead Counsel's experience and www.rgrdlaw.com.

- 13 -

2004) ("The more experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, reasonableness, and adequacy.").

### E. The Stage of the Proceedings and the Amount of Discovery Completed

To ensure that a plaintiff has had access to sufficient information to evaluate both its case and the adequacy of the settlement proposal, courts in the Seventh Circuit consider the stage of the proceedings and the discovery taken. *AT&T Mobility*, 789 F. Supp. 2d at 958; *Isby*, 75 F.3d at 1196.

As discussed herein and in the Robbins Declaration, at the time Lead Plaintiff and Lead Counsel agreed to the settlement of this Action, both their knowledge and the proceedings themselves had reached a stage where they were able to make a highly informed and intelligent evaluation of the Action and propriety of the Settlement. Lead Counsel conducted extensive fact discovery, and completed expert discovery on loss causation and damages. Robbins Decl., ¶¶36-43; 48-50. Lead Counsel also participated in extensive settlement negotiations, including an all-day mediation session with Judge Phillips where Lead Plaintiff's claims and Defendants' defenses were fully vetted. *Id.*, ¶51. Having sufficient information to properly evaluate the case, the Action was settled on terms highly favorable to the Class. This factor also weighs strongly in favor of the Court's approval of the Settlement.

For the foregoing reasons, the Settlement is in all respects fair, reasonable and adequate, and should be approved.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks approval of the Plan of Allocation of the Settlement proceeds. The Plan of Allocation is set forth in the Notice mailed to Class Members. Assessment of a plan of allocation in a class action under Federal Rule of Civil Procedure 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 U.S. Dist. LEXIS 20397, at *9; *Harnischfeger*, 212 F.R.D. at 410. Where, as here,

the allocation plan "ensures that every Class Member who submits a valid claim will receive a portion of the settlement fund," the fairness test is met. *City of Greenville v. Syngenta*, 904 F. Supp. 2d 902, 911 (S.D. Ill. 2012).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members. Here, the Plan of Allocation was developed by Lead Counsel in conjunction with its damages consultants and it reflects an assessment of the theories asserted in this case. The Plan of Allocation will result in a fair and equitable distribution of the proceeds among Class Members who submit valid claims. To date, no Class Member has objected to the Plan of Allocation. As a result, Lead Counsel believes that it is fair, reasonable, and equitable to all members of the Class and should be approved.

## V.  CONCLUSION

For all of the reasons discussed herein and in the Robbins Declaration, the Settlement is an excellent result that confers a substantial, certain, and immediate benefit to the Class. The Plan of Allocation is equitable to Class Members and is necessarily fair, reasonable, and adequate. Therefore, Lead Plaintiff respectfully requests that this Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

DATED: December 4, 2015                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           ROBERT J. ROBBINS
                                           BAILIE L. HEIKKINEN
                                           KATHLEEN B. DOUGLAS
                                           HOLLY W. KIMMEL
                                           JANINE D. ARNO


                                           _____s/ Robert J. Robbins_____
                                                    ROBERT J. ROBBINS

- 15 -

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
    & DOWD LLP
SPENCER A. BURKHOLZ
JEFFREY D. LIGHT
TOR GRONBORG
JONAH H. GOLDSTEIN
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW E. VAN TINE
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel for Lead Plaintiff

- 16 -

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Robert J. Robbins
ROBERT J. ROBBINS

## Mailing Information for a Case 1:10-cv-06016 City of Lakeland Employees Pension Plan v. Baxter International Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Janine D Arno**
  jarno@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A Burkholz**
  spenceb@rgrdlaw.com

- **Kathleen Barber Douglas**
  kdouglas@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Jason Adeeb Forge**
  jforge@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Michael Jerry Freed**
  mfreed@fklmlaw.com,mkhamoo@fklmlaw.com

- **Andrew J Fuchs**
  afuchs@skadden.com,chdocket@skadden.com

- **Jonah Harry Goldstein**
  jonahg@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Thomas Heffner**
  mheffner@heffnerhurst.com,mhurst@heffnerhurst.com

- **Bailie Heikkinen**
  bheikkinen@rgrdlaw.com

- **Steven A Kanner**
  skanner@fklmlaw.com

- **Holly Wiseberg Kimmel**
  hkimmel@rgrdlaw.com

- **Matthew Robert Kipp**
  mkipp@skadden.com,chdocket@skadden.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Donna L. McDevitt**
  dmcdevit@skadden.com,chdocket@skadden.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Amelia Susan Newton**
  amy@attorneyzim.com

- **Norman Rifkind**
  Norman@rifslaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,cthornton@rgrdlaw.com,hkimmel@rgrdlaw.com,e_file_fl@rgrdlaw.com,ckent@rgrdlaw.com

- **Donald Lewis Sawyer**
  dsawyer@fklmlaw.com,mkhamoo@fklmlaw.com

- **Judith S. Scolnick**
  jscolnick@scott-scott.com,mschwartz@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Martin Vincent Sinclair**
  martin.sinclair@skadden.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)