UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF LAKELAND EMPLOYEES PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:10-cv-06016 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | Assigned to: Judge John J. Tharp, Jr. |
| vs. | ) ) | |
| BAXTER INTERNATIONAL INC., et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

LEAD COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     AWARD OF ATTORNEYS' FEES .................................................................3

        A.      A Reasonable Percentage of the Fund Recovered Is the Appropriate
                Approach to Awarding Attorneys' Fees in Common Fund Cases..........................3

        B.      The Requested Fee Is Reasonable and Appropriate as a Percentage of the
                Common Fund .........................................................................................5

                1.      The 26% Attorneys' Fee Request Is Consistent with Seventh
                        Circuit Authority...........................................................................5

                2.      Lead Plaintiff's Counsel Provided Quality Legal Services that
                        Produced Excellent Benefits for the Class....................................8

                3.      The Requested Attorneys' Fees Are Fair and Reasonable in Light
                        of the Contingent Nature of the Representation .........................9

                4.      The Stakes of the Action Favor a 26% Fee Award....................12

                5.      The Reaction of the Class Supports the Requested Award......14

III.    LEAD PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND
        WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
        OBTAINED .....................................................................................................14

IV.     CONCLUSION................................................................................................15

1095018_3

# TABLE OF AUTHORITIES

Page

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ............................................................2

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ..........................................................12

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ..............................................................12

*Beesley v. Int'l Paper Co.*,
  No. 3:06-cv-703-DRH-CJP, 2014 WL 375432
  (S.D. Ill. Jan. 31, 2014) ...................................................................9

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
  No. 1:11-cv-08332-AJS, slip op.
  (N.D. Ill. Aug. 5, 2014) ...................................................................7

*Conlee v. WMS Indus., Inc.*,
  No. 1:11-cv-03503-JBZ, slip op.
  (N.D. Ill. May 20, 2014) ..................................................................7

*Florin v. Nationsbank, N.A.*,
  34 F.3d 560 (7th Cir. 1994) ..............................................................4

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ............................................................5

*Heekin v. Anthem Inc.*,
  No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032
  (S.D. Ind. Nov. 20, 2012) .................................................................7

*Hubbard v. BankAtlantic Bancorp., Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..........................................................12

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...............................................11

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ............................................................14

*In re Dairy Farmers of Am., Inc. Class Antitrust Litig.*,
  No. 09-CV-3690, 2015 WL 753948
  (N.D. Ill. Feb. 20, 2015) ...................................................................7

1095018_3

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ........................................................................11

*In re Ready-Mixed Concrete Antitrust Litig.*,
No. 1:05-cv-00979-SEB-JMS, 2010 U.S. Dist. LEXIS 30776
(S.D. Ind. Mar. 30, 2010) ...........................................................................4

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ..........................................................7

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).....................................................................7, 8

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ........................................................... *passim*

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) .......................................................................4

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) .......................................................................9

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695, 2007 WL 4115808
(S.D.N.Y. Nov. 7, 2007) ............................................................................11

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)
*aff'd*, 798 F.2d 35 (2d Cir. 1986) .............................................................13

*In re Xcel Energy, Inc.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................11

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964).....................................................................................4

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011) .......................................................10

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ...............................................................4, 5, 6

1095018_3

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987)............................................................................12

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009)...............................................................5

*Meyenburg v. Exxon Mobil Corp.*,
No. 3:05-cv-15-DGW, 2006 WL 2191422
(S.D. Ill. July 31, 2006)....................................................................................6

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010).........................................................................................11

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................12

*Savani v. URS Prof'l Solutions LLC*,
No. 1:06-cv-02805-JMC, 2014 WL 172503
(D.S.C. Jan. 15, 2014)......................................................................................12

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ *passim*

*Silverman v. Motorola*,
739 F.3d 956 (7th Cir. 2013) .........................................................................3, 5

*Silverman v. Motorola, Inc.*,
No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012)
*aff'd*, 739 F.3d 956 (7th Cir. 2013).............................................................4, 5, 7

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) .....................................................................3, 6, 12

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) ...................................................................5, 6, 8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................4

*Trustees v. Greenough*,
105 U.S. 527 (1882)...........................................................................................3

*Will v. Gen. Dynamics Corp.*,
    No. 06-698-GPM, 2010 WL 4818174
    (S.D. Ill. Nov. 22, 2010) ..............................................................................................4

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .....................................................................................5

*Wong v. Accretive Health, Inc.*,
    No. 1:12-cv-03102, 2014 WL 7717579
    (N.D. Ill. Apr. 30, 2014) ...........................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(6) ...............................................................................................................3

**SECONDARY AUTHORITIES**

Dr. Renzo Comolli & Svetlana Starykh, *Recent Trends in
Securities Class Action Litigation: 2014 Full-Year Review,
Settlement Amounts Plummeting in 2014, but post-Halliburton II
filing Rebound* (NERA Jan. 20, 2015) .............................................................................7

Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller &
Svetlana Starykh, *Recent Trends in Securities Class Action
Litigation: 2012 Full-Year Review* (NERA Jan. 29, 2013) ...........................................2

# I. INTRODUCTION

Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") has obtained a Settlement Fund[1] consisting of $42,500,000, plus interest earned thereon. The settlement of this Action on these terms is a highly favorable result and was achieved through the skill, tenacity, and effective advocacy of Lead Counsel. As compensation for counsel's efforts in achieving this result, Lead Counsel seeks an award of attorneys' fees of 26% of the Settlement Fund, plus expenses incurred in the prosecution of the Action in the amount of $1,130,589.20, plus interest at the same rate and for the same period as that earned by the Settlement Fund. The requested fee was negotiated by Lead Plaintiff in the context of this particular case (*see* Robbins Decl., ¶8), is lower than many prior fee awards for similar cases, and is well within the range of percentages normally awarded in class actions by courts in this Circuit and nationwide, and is the appropriate method of compensating counsel.

The 26% fee requested in this Action is especially warranted in light of the substantial recovery obtained for the Class, the contingent nature of counsel's representation, the extensive efforts of counsel in obtaining this highly favorable result, and the risks faced and overcome in bringing and prosecuting this Action against Defendants who were represented by highly skilled and experienced lawyers.[2] The Action was prosecuted under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and, therefore, was risky and difficult from the outset. After the PSLRA, in a *per curiam* opinion retired Supreme Court Justice Sandra Day O'Connor

---

[1] Unless otherwise defined, all capitalized terms used herein have the same meanings assigned to them in the Amended Settlement Agreement, dated August 27, 2015. Dkt. No. 292.

[2] The efforts of counsel in achieving this Settlement are set forth in greater detail in the accompanying Declaration of Robert J. Robbins in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses (the "Robbins Declaration"). Also submitted herewith in support of approval of the Settlement is Lead Plaintiff's Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (the "Settlement Brief").

- 1 -

recognized that, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). As a result, a significant number of cases result in dismissal according to a study of securities class actions filed and resolved between January 2000 and December 2012, finding that 38% of cases filed in the Seventh Circuit during that period were dismissed in defendants' favor. *See* Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review* ("NERA Report") at 18, Figure 16 (NERA Jan. 29, 2013).

Despite these odds, Lead Counsel undertook representation of the Class on a contingent fee basis. Moreover, whereas defense counsel is typically paid on regular installments during the litigation, no payment has been made to date for Lead Counsel's services nor has it been paid for the litigation expenses it has incurred on behalf of the Class. Lead Counsel firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as attorneys who are recognized leaders in securities fraud cases and unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In this case, which asserted claims based on complex legal and factual issues that were vigorously opposed by skilled and experienced defense counsel from a highly respected law firm, Lead Counsel succeeded in securing a highly favorable result for the Class.

As discussed herein, as well as in the Settlement Brief and the Robbins Declaration, the requested fee is fair and reasonable when considered under the applicable standards in the Seventh Circuit and is well within the range of awards in class actions in this Circuit and courts nationwide, particularly in view of the substantial risks of bringing and pursuing this Action, the considerable investigation and litigation efforts, and the results achieved for the Class. Moreover, the expenses

- 2 -

requested are reasonable in amount and were necessarily incurred for the successful prosecution of this Action.

## II.    AWARD OF ATTORNEYS' FEES

### A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class.  Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund. Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1882), attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011).[3]

The Seventh Circuit has also recognized that in addition to providing just compensation, reasonable awards of attorneys' fees from a common fund are required to attract skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons.  *See, e.g.*, *Silverman v. Motorola*, 739 F.3d 956, 958 (7th Cir. 2013) (approving 27.5% fee award to Robbins Geller on $200 million settlement and noting that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel"); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001) ("*Synthroid I*") ("awards net of fees could rise with the level of fees if a higher payment attracts the best counsel").  The Supreme Court has also

---

[3]    The PSLRA also supports the use of the percentage-of-the-recovery method.  *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

emphasized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

While the Seventh Circuit has stated that "the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court," it has recognized that there are advantages to the percentage-of-the-recovery method, including its relative objectivity and ease of its application. *See Florin v. Nationsbank, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). The Seventh Circuit has also commented on the disadvantages of the lodestar method of compensation. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (noting that the lodestar method may reward inefficiency); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (stating that the lodestar method may create a conflict of interest between the attorney and client).[4] Recognizing these advantages, it is common for judges in this Circuit to approve percentage-of-the-fund fees without any regard to lodestar. *See Silverman*, 2012 WL 1597388, at *4 (stating it was unnecessary to consider lodestar) (St. Eve, J.); *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979-SEB-JMS, 2010 U.S. Dist. LEXIS 30776, at *25 (S.D. Ind. Mar. 30, 2010) ("it would be financially impossible, or irrational, for any of the named Plaintiffs to have agreed to pursue" complex class action "on any basis other than a contingency arrangement with expenses advanced by counsel").

The percentage-of-the-fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *See Kirchoff*, 786 F.2d at 324 ("When the 'prevailing'

---

[4]    *See Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *see also Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).[5]  In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains."  *Kirchoff*, 786 F.2d at 325; *see also Silverman*, 2012 WL 1597388, at *1; *Schulte*, 805 F. Supp. 2d at 597.

Indeed, the Seventh Circuit has endorsed the percentage-of-the-fund method when awarding attorneys' fees from a common fund.  *See, e.g.*, *Synthroid I*, 264 F.3d at 718; *Silverman*, 739 F.3d at 959 (affirming district court award of percentage of the recovery to class counsel and rejecting objections without any reference or consideration of lodestar); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 598-600 (7th Cir. 2005) (affirming percentage-of-the-fund fee award); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award).

### B. The Requested Fee Is Reasonable and Appropriate as a Percentage of the Common Fund

#### 1. The 26% Attorneys' Fee Request Is Consistent with Seventh Circuit Authority

The Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *Synthroid I*, 264 F.3d at 718.  In determining the appropriateness of the percentage to award attorneys in a securities class action, a district court must factor into its

---

[5]  *See also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (stating "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services").

assessment "the value that the market would have placed on Counsel's legal services had its fee been arranged at the outset" to "avoid[] assigning a value 'based on nothing more than a subjective judgment regarding [Counsel's] work.'" *Sutton*, 504 F.3d at 693, 694 (citation omitted). The *Synthroid I* court further explained that the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." 264 F.3d at 721.

In *Taubenfeld*, the Seventh Circuit provided further guidance for the award of attorneys' fees in a securities class action:

> "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." . . . Although [it is] impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

415 F.3d at 599 (citation omitted). If this case had been individually litigated, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33-1/3% to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial).

The percentage sought here, 26% of the $42.5 million Settlement Fund, is consistent with or below attorneys' fee percentages awarded within this Circuit as Judges in this district have recognized "that an award of 33.3% of the settlement fund is within the reasonable range." *Schulte*, 805 F. Supp. 2d at 598 (Dow, J.); *see also Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"). The fee was the product of negotiation with Lead Plaintiff, and while the fee in each

- 6 -

case can vary based on particular facts and likelihood of recovery in the case, it is notable that the

26% fee is below prior fee awards in similar class action cases in this district and circuit.[6]

The requested fee is also consistent with the median fee award for securities cases based on a

recent analysis of fee awards conducted in 2014 by NERA. Using data from securities class actions

from 1996-2014, the study found that for settlements between $25 million and $100 million, where

this Settlement falls, the median fee award was 26.8% of the settlement amount and for settlements

between 2012-2014 in the same range of recovery, the median fee award was 25% of the settlement

amount. Dr. Renzo Comolli & Svetlana Starykh, *Recent Trends in Securities Class Action

Litigation: 2014 Full-Year Review*, *Settlement Amounts Plummeting in 2014, but post-Halliburton II

filing Rebound* at 34, Figure 29 (NERA Jan. 20, 2015) ("2015 NERA Study").

The requested fee is also consistent with the range of three studies relied on by the district

court in *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001). As the Third Circuit

noted in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005):

> In comparing this fee request to awards in similar cases, the District Court
> found persuasive three studies referenced by Professor Coffee: one study of
> securities class action settlements over $10 million that found an average percentage
> fee recovery of 31%; a second study by the Federal Judicial Center of all class
> actions resolved or settled over a four-year period that found a median percentage
> recovery range of 27-30%; and a third study of class action settlements between $100
> million and $200 million that found recoveries in the 25-30% range were "fairly
> standard." We see no abuse of discretion in the District Court's reliance on these
> studies.

---

[6]   *See, e.g.*, *Silverman*, 2012 WL 1597388, at *5 (awarding fees of 27.5% on $200 million settlement);
*Heekin v. Anthem Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *4-*5 (S.D. Ind. Nov. 20, 2012)
(approving 33% fee for $90 million settlement); *Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, 2014 WL
7717579, at *1 (N.D. Ill. Apr. 30, 2014) (awarding fees of 30% on $14 million); *Conlee v. WMS Indus., Inc.*,
No. 1:11-cv-03503-JBZ, slip op., ¶4 (N.D. Ill. May 20, 2014) (awarding fees of 33% on $3.7 million
settlement) (Zagel, J.); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332-
AJS, slip op., ¶4 (N.D. Ill. Aug. 5, 2014) (awarding fees of 30% on $60 million); *In re Dairy Farmers of Am.,
Inc. Class Antitrust Litig.*, No. 09-CV-3690, 2015 WL 753948, at *16 (N.D. Ill. Feb. 20, 2015) (awarding
33% fee request of $46 million settlement in antitrust case).

- 7 -

*Id.* at 303.  Accordingly, Lead Counsel's request for fees in the amount of 26% of the Settlement Fund, as supported by the Court-appointed Lead Plaintiff, is reasonable in this case.

> **2.    Lead Plaintiff's Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class**

In evaluating counsel's fee request, the Seventh Circuit holds that courts may consider the "quality of legal services rendered."  *Taubenfeld*, 415 F.3d at 600; *Synthroid I*, 264 F.3d at 721. From the outset, Lead Counsel sought to obtain the maximum recovery for the Class.  This case required a determined investigation, the skill to respond to a host of legal and factual defenses raised by Defendants, and an extensive effort in the prosecution of the Action.  During the course of the Action, counsel for Lead Plaintiff spent over 32,800 hours of attorney and paraprofessional time conducting extensive discovery, including the review of some four million pages of documents produced by Defendants and third parties, preparing for and taking some 27 fact depositions, and completing expert discovery on loss causation and damages.[7]

Lead Counsel and Lead Plaintiff also participated in extensive settlement negotiations, including an all-day mediation session with Judge Phillips where Lead Plaintiff's claims and Defendants' defenses were fully vetted.  Prior to the mediation, Lead Plaintiff and Defendants submitted to Judge Phillips and exchanged detailed mediation statements and replies, each supported by evidence further highlighting the factual and legal issues in dispute.  Having sufficient information to properly evaluate the case, the Action was settled on terms highly favorable to the Class.  During settlement negotiations, Lead Counsel demonstrated its willingness to continue to litigate this Action rather than accept a settlement that was not in the best interest of the Class.

---

[7]    For a more detailed account of Lead Counsel's efforts in this Action, the Court is respectfully referred to the Robbins Declaration.

Robbins Decl., ¶51. Lead Counsel's skill, expertise, and excellent advocacy in representing the Class are reflected in the highly favorable result Lead Counsel achieved for the Class.

The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel. *See, e.g.*, *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) (observing that "[l]itigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination"). Lead Counsel was opposed in this Action by highly experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP, a firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. In the face of this formidable opposition, Lead Counsel was able to develop its case so as to persuade Defendants to settle the Action on terms very favorable to the Class.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

As the *Synthroid I* court noted, the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Taubenfeld*, 415 F.3d at 600 (court should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"). "[T]he higher the risk of failure the larger the contingent fee that a client would have to pay in an arm's length negotiation with the lawyer in advance of the suit." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

Despite their success in bolstering the case through zealous prosecution of Lead Plaintiff's claims, Lead Counsel assumed a significant risk that Defendants would successfully defend this case during motions to dismiss, class certification, summary judgment, pre-trial *Daubert* proceedings, and trial and the Class (and Lead Counsel) would recover nothing. One of the greatest attributes of Robbins Geller is its ability to conduct a diligent investigation and prosecution of any case from

- 9 -

inception to trial despite the risk that the class' claims, while viable, may not prevail. In this case, Lead Counsel devoted thousands of hours of work and over $1.1 million in expenses to the factual investigation and discovery of the Class' claims. Few law firms could have, or would have, devoted such time and financial resources to this case. Had Lead Plaintiff been unable to settle this Action or otherwise prevail on the merits during the trial, the loss of time, money, and effort by Lead Counsel would have been enormous.

As noted, the PSLRA has increased the difficulty of prosecuting securities fraud cases. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (noting that the passage of the PSLRA "ma[de] it more difficult for plaintiffs to survive a motion to dismiss"). Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. As in *Schulte*, defendants here asserted "a number of potentially meritorious defenses," and "there was no certainty that Plaintiffs would win, or that the case would settle; and if Plaintiffs had lost, Class Counsel 'would receive no fees at all.'" 805 F. Supp. 2d at 598-99 (citation omitted). Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular (*e.g.*, monthly) basis, Lead Counsel had no such guarantee of payment, had to wait several years for any payment while the case was prosecuted, and have not been compensated for over $16 million in time and over $1.1 million in expenses invested in the case. While the outcome here was highly successful, there was no guarantee it would be at the time Lead Counsel agreed to take the case, and the fee award sought is a substantial discount from even the lodestar.

Not only was there a risk of dismissal at the pleading stage, but even after Lead Plaintiff successfully opposed Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles. Defendants steadfastly maintained that Lead Plaintiff would be unable to prove liability and

1095018_3

damages. Assuming Lead Plaintiff was able to overcome Defendants' almost certain motion(s) for summary judgment after the completion of discovery, it still would have faced significant risks in proving falsity, materiality, and scienter. Moreover, even apart from proving liability, proving loss causation and damages in securities fraud cases is complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. Here, the damage assessments of the parties' respective experts who would testify at trial would be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."

There are numerous examples where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. Securities fraud cases have been dismissed prior to discovery, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW(EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completion of extensive foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)). In fact, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CCM), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("There are numerous class actions in which counsel

expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.").[8]

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort and after working without compensation for a substantial period of time. Lead Counsel committed significant resources of both time and money to the vigorous and successful prosecution of the Action for the benefit of the Class. The risk of non-payment associated with this contingent litigation should be considered when determining whether the requested fee is reasonable under Seventh Circuit authority. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated"). The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 4. The Stakes of the Action Favor a 26% Fee Award

The Court should also consider the "stakes of the case" in determining a reasonable attorneys' fee. *Synthroid I*, 264 F.3d at 721. As in other complex commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598; *see also Savani v. URS Prof'l Solutions LLC*, No. 1:06-cv-02805-JMC, 2014 WL

---

[8]    For illustrative examples, *see, e.g.*, *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversal of jury verdict of $81 million); *Landy v. Amsterdam*, 815 F.2d 925, 934 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

172503, at *5 (D.S.C. Jan. 15, 2014) (finding that the risks of "complex and multi-year class action cases" are "immense").

Lead Counsel was successful in obtaining a significant recovery in the litigation, which is more beneficial to the Class than waiting several more years after summary judgment, trial, post-trial motions, and appeals to obtain their recovery. As the litigation advances, the risks can also increase. Absent a victory at trial and subsequent post-trial motions and appeal, Lead Counsel would not have been compensated for thousands of hours of attorney and paraprofessional time, and would have had to write off expert and consulting fees and other expenses. And, even if Lead Plaintiff prevailed at trial, Defendants would have the opportunity to appeal any judgment obtained, possibly delaying a favorable resolution for years. Lead Counsel undertook this case fully prepared to litigate against these obstacles. As the court stated in *In re Warner Commc'ns Sec. Litig.*:

> Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) (citing numerous examples), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Lead Counsel's experience in *Jaffe v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ("*Household*"), is illustrative of the risks and delays inherent in litigation such as this, even after a jury verdict in favor of plaintiffs and the class. On May 7, 2009, following a six-week trial before Judge Guzman, the jury in *Household* returned a verdict finding that the defendants had violated the federal securities laws and that members of the class suffered damages of up to $23.94 per share. *See Household*, Jury Verdict Form (May 7, 2009) (Dkt. No. 1611). Subsequently, there were numerous post-verdict motions and extensive motion practice and discovery related to class members' claims. Because of these proceedings, judgment of $2.46 billion was not entered until

- 13 -

October 17, 2013, which was then appealed. On May 21, 2015, the Seventh Circuit vacated the judgment and ruled that the defendants were entitled to a new trial on certain limited issues. A new trial is currently scheduled for June 6, 2016.

### 5. The Reaction of the Class Supports the Requested Award

Pursuant to this Court's September 18, 2015 Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order") (Dkt. No. 293), Notices have been mailed to over 392,700 potential Class Members and nominees. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees of up to 26% of the Settlement Fund, plus expenses not to exceed $1,350,000, plus interest thereon. Class Members were also advised of their right to object to Lead Counsel's fee and expense request. While the deadline to file objections – December 18, 2015 – has not yet passed, to date, not a single objection to any aspect of the Settlement, including the fee and expense request, has been received.[9]

## III. LEAD PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Synthroid I*, 264 F.3d at 722; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Lead and Liaison Counsel also request payment of expenses incurred in connection with the prosecution of this Action. Lead and Liaison Counsel are requesting payment of expenses in the amount of $1,130,589.20 that were incurred in prosecuting the Action. These expenses are set forth in the accompanying declarations of Robbins Geller Rudman & Dowd LLP and Miller Law LLC.[10]

---

[9]     In accordance with the Court's Notice Order, Lead Counsel will address any objections received in the reply brief scheduled to be filed January 12, 2016.

[10]     Of the $1,130,589.20 requested in expenses, Lead Counsel is requesting $3,233.89 in financial research costs paid to Thomson Financial for access to analyst reports, SEC filings, conference call transcripts, stock

The expenses requested are the reasonable costs of prosecuting the Action and thus should be paid from the Settlement Fund.

## IV. CONCLUSION

For all the reasons stated herein, in the Settlement Brief, and in the Robbins Declaration, Lead Counsel submits that the Court should approve the fee and expense application and enter an order awarding Lead Counsel 26% of the Settlement Fund, plus payment of $1,130,589.20 in expenses, plus the interest earned on both amounts at the same rate and for the same period as that earned on that portion of the Settlement Fund until paid.

DATED: December 4, 2015        Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
KATHLEEN B. DOUGLAS
HOLLY W. KIMMEL
JANINE D. ARNO


s/ Robert J. Robbins
ROBERT J. ROBBINS

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

---

ownership data, and historical transactional information. Lead and Liaison Counsel, however, are not requesting any expenses related to computer-assisted legal research such as LEXIS/NEXIS.

ROBBINS GELLER RUDMAN
 & DOWD LLP
SPENCER A. BURKHOLZ
JEFFREY D. LIGHT
TOR GRONBORG
JONAH H. GOLDSTEIN
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW E. VAN TINE
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel for Lead Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Robert J. Robbins
ROBERT J. ROBBINS

## Mailing Information for a Case 1:10-cv-06016 City of Lakeland Employees Pension Plan v. Baxter International Inc. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Janine D Arno**
  jarno@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A Burkholz**
  spenceb@rgrdlaw.com

- **Kathleen Barber Douglas**
  kdouglas@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Jason Adeeb Forge**
  jforge@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Michael Jerry Freed**
  mfreed@fklmlaw.com,mkhamoo@fklmlaw.com

- **Andrew J Fuchs**
  afuchs@skadden.com,chdocket@skadden.com

- **Jonah Harry Goldstein**
  jonahg@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Thomas Heffner**
  mheffner@heffnerhurst.com,mhurst@heffnerhurst.com

- **Bailie Heikkinen**
  bheikkinen@rgrdlaw.com

- **Steven A Kanner**
  skanner@fklmlaw.com

- **Holly Wiseberg Kimmel**
  hkimmel@rgrdlaw.com

- **Matthew Robert Kipp**
  mkipp@skadden.com,chdocket@skadden.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Donna L. McDevitt**
  dmcdevit@skadden.com,chdocket@skadden.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Amelia Susan Newton**
  amy@attorneyzim.com

- **Norman Rifkind**
  Norman@rifslaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,cthornton@rgrdlaw.com,hkimmel@rgrdlaw.com,e_file_fl@rgrdlaw.com,ckent@rgrdlaw.com

- **Donald Lewis Sawyer**
  dsawyer@fklmlaw.com,mkhamoo@fklmlaw.com

- **Judith S. Scolnick**
  jscolnick@scott-scott.com,mschwartz@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Martin Vincent Sinclair**
  martin.sinclair@skadden.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`