```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
    CITY OF LAKELAND EMPLOYEES    )
 4  PENSION PLAN, individually and )
    on behalf of all others       )
 5  similarly situated,           )
                                  )
 6              Plaintiff,        ) Case No. 10 C 6016
                                  )
 7                                ) Chicago, Illinois
    -vs-                          ) January 22, 2016
 8                                ) 1:00 p.m.
                                  )
 9  BAXTER INTERNATIONAL INC.,    )
                                  )
10              Defendant.        )

11
                    TRANSCRIPT OF PROCEEDINGS
12           BEFORE THE HONORABLE JOHN J. THARP, JR.

13  APPEARANCES:

14  For the Plaintiffs:   MR. ROBERT J. ROBBINS
                          ROBBINS GELLER RUDMAN & DOWD LLP
15                        120 E. Palmetto Park Road, Suite 500
                          Boca Raton, Florida   33423
16
                          MR. JEFFREY D. LIGHT
17                        ROBBINS GELLER RUDMAN & DOWD LLP
                          655 West Broadway, Suite 1900
18                        San Diego, California   92101

19                        MR. JAMES E. BARZ
                          ROBBINS GELLER RUDMAN & DOWD LLP
20                        200 South Wacker Drive, Suite 3100
                          Chicago, Illinois   60606
21
                          MS. LORI ANN FANNING
22                        MILLER LAW LLC
                          115 South LaSalle Street, Suite 2910
23                        Chicago, Illinois 60603

24

25
```

```
 1   APPEARANCES: (Continued)

 2
     For the Defendant:      MR. ANDREW J. FUCHS
 3                           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                             155 North Wacker Drive, Suite 2700
 4                           Chicago, Illinois  60606

 5
     Court Reporter:
 6

 7            KELLY M. FITZGERALD, CSR, RPR, RMR, CRR
                     Official Court Reporter
 8                  United States District Court
             219 South Dearborn Street, Suite 1420
 9                  Chicago, Illinois  60604
                   Telephone:  (312) 818-6626
10            kelly_fitzgerald@ilnd.uscourts.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Proceedings heard in open court:)
2                 THE CLERK:  10 CV 6016, City of Lakeland v. Baxter.
3                 MR. ROBBINS:  Good afternoon, Your Honor.  Robert
4    Robbins on behalf of the pension fund.  With me is Jim Barz
5    and Jeff Light.  And our liaison counsel representative Lori
6    Fanning is here as well.
7                 MR. FUCHS:  Andrew Fuchs for defendants.
8                 THE COURT:  Good afternoon.
9                 MR. ROBBINS:  Good afternoon.
10                THE COURT:  All right.  We are here on a final
11   approval hearing, fairness hearing with respect to the
12   proposed settlement that the parties have reached.  The
13   preliminary approval order was granted on September 18, 2015.
14   I understand that there was one objection filed by Mr. Price;
15   is that correct?
16                MR. ROBBINS:  Yes, Your Honor.  Mr. Price submitted
17   an objection addressed to the Court.  It did not follow the
18   procedures set forth in the notice for submitting a proper
19   objection.  He did not indicate when he purchased, acquired or
20   sold any shares of Baxter stock, so there's no way from the
21   face of his objection to determine whether he is actually a
22   member of the class.  But as we indicated in our reply papers
23   and, you know, if he is to attend the hearing and state a more
24   specific objection to the settlement itself, we would be happy
25   to hear him and answer -- you know, respond to that objection.

1          THE COURT:  All right.  Is Mr. Price present?  All
2    right.  He's not present.
3          The objection that was received, in addition to the
4    deficiencies that Mr. Robbins has just identified, contain no
5    explanation whatsoever of the grounds or bases of the
6    objection.  It did indicate that Mr. Price planned to attend
7    this hearing.  If he shows up in the course of the hearing, I
8    will hear him; but if that does not occur, the objection will
9    be overruled.
10         All right.  So I have received the motion for
11   approval, and I have reviewed it.  I don't know if you have
12   comments, Mr. Robbins, or want to put anything on the record
13   beyond what you've submitted in writing?
14         MR. ROBBINS:  Your Honor, I think our submissions are
15   quite thorough and establish that we have -- the settlement
16   here satisfies the factors enumerated by the Seventh Circuit
17   in *Wong v. Creative Health* and other cases as well as to why
18   this settlement is fair, reasonable and adequate.
19         You know, we believe the recovery here is a
20   substantial recovery for the class.  As Your Honor mentioned,
21   there was only the one objection.  There were eleven opt-outs,
22   requests for exclusion submitted.  Those were all by
23   individual shareholders.  No institutional investors have
24   requested to be excluded from the class.  So the reaction of
25   the class itself is overwhelmingly positive, and we view that

1  as a substantial factor in support of the fairness,
2  reasonableness and adequacy of the settlement and ask that the
3  Court enter the final judgment, approve the plan of allocation
4  and award attorneys' fees and expenses as requested.  If Your
5  Honor -- I'm happy to walk through those elements if you
6  prefer, but --
7           THE COURT:  Not necessary.  As I said, I have gone
8  through the material.  I'll put some findings on the record
9  momentarily.
10          Anything the defendants want to put on the record
11 or --
12          MR. FUCHS:  We have nothing to add, Your Honor.
13          THE COURT:  Okay.  All right.  I have already
14 addressed the issue of the objector. Certification of a
15 settlement class is already set forth and the bases for
16 certification of a settlement class are already set forth in
17 the preliminary approval order.  And I'll reaffirm that in the
18 context of this settlement where the parties have reasonably
19 agreed to resolve the dispute -- and this is the sort of --
20 notwithstanding there was a substantial argument between the
21 parties that was ultimately not resolved with respect to class
22 certification on the price impact issue, notwithstanding that
23 this type of case is almost paradigmatic for class
24 certification and particularly so in the context of a
25 settlement, so I do confirm that the conditions for

1  certification of the settlement class under Rule 23, I
2  believe, are adequately satisfied.
3  　　　　　The factors relevant to the Court's evaluation of the
4  fairness of the settlement include numerous factors, but I
5  will mention what I think are the most significant briefly.
6  　　　　　First is the -- to be considered is the size of the
7  settlement itself.  This represents a very significant
8  recovery.  I think the net recovery to the class after
9  deductions from the settlement fund for counsels' fees, other
10 administrative expenses and that sort of thing leaves a net
11 recovery of approximately $30 million to the class.  That
12 recovery is significantly in excess -- about three times
13 greater than the fees earned by counsel.  So this is not a
14 situation where it is remotely the case that the fees earned
15 by counsel from the litigation outstrip the recovery for the
16 class.
17 　　　　　By any number of aspects, this is a very significant
18 recovery even though, you know, where you've got a maximum
19 damage model that might offer upwards of a billion dollars in
20 damages, the data that's submitted in support of the
21 settlement agreement shows that average recovery for
22 settlements over basically the last two decades in securities
23 fraud cases involving damages between one and five billion
24 dollars, the average recovery is 1.2 percent of the maximum
25 damages; whereas, this recovery is about 3.3 percent,

1  substantially above the average recovery that is achieved in
2  these kinds of cases.
3       In addition, I note there are many reasons that the
4  maximum damages that a damage model might estimate can grossly
5  overstate the likely recovery for the class.  Among those
6  factors being the presence of confounding events that create
7  issues regarding causation for any price drops corresponding
8  to the alleged corrective disclosures, the arguable lack of
9  statistically significant price increases on dates of the
10 alleged false statements, arguments about the appropriate
11 length of a class period based on the nature of the alleged
12 false statements; for example, false statements that are
13 alleged or arguably are not actionable statements but are,
14 rather, forward-looking statements subject to safe harbors,
15 and arguments about the methodology employed by any particular
16 damage model.
17      In this case, those arguments might include arguments
18 about the proprietary of a two-day event window versus a
19 one-day event window, the use of a one-year baseline period to
20 establish the statistical correlation between the movement of
21 the relevant stock indexes and Baxter stock.  Those are all
22 issues that, you know, could well affect the size of the
23 damages that the plaintiffs could claim were the case to go
24 forward and then add to those, of course, those very specific
25 issues, the difficulties inherent in the substantive

Case: 1:10-cv-06016 Document #: 313 Filed: 01/29/16 Page 8 of 14 PageID #:6926

8

1 allegations of this case proving that statements were actually
2 false, No. 1, and if they were, the difficulty proving
3 *scienter* as to the specific defendants.
4     On top of that, one must add the uncertainty and risk
5 inherent in any litigation, and I add to that as well the fact
6 that the recovery for class members who participate in this
7 claims process that is envisioned by the settlement is likely
8 to be increased by the fact that there are always substantial
9 numbers of class members who do not submit claims for one
10 reason or another.
11     I also note in considering the fairness of the size
12 of the settlement is that the settlement was negotiated at
13 arm's length by very experienced counsel on both sides,
14 assisted by a highly respected mediator, former federal judge
15 with substantial experience mediating and adjudicating cases
16 like this, and that ultimately this settlement, this arm's
17 length negotiation didn't produce an agreement directly
18 between the parties, but the agreement was ultimately the
19 product of a mediator's proposal.  All of those factors weigh
20 significantly in the Court's evaluation that the size of the
21 settlement is, in fact, a fair and reasonable settlement in
22 this particular case for this particular class.
23     Another factor that the Court has considered is the
24 stage of the proceedings at which this settlement was arrived
25 at.  There was substantial work that had been done, so counsel

1   and the lead plaintiff were in a quite good position to be
2   able to accurately assess the prospects for success of the
3   litigation.  The case has been extensively litigated from day
4   one.  There were a huge number of documents produced in
5   discovery.  27 depositions had already taken place by the time
6   the parties had reached a settlement, substantial expert
7   discovery had been conducted, and there had already been
8   significant dispositive motion practice both with respect to a
9   motion to dismiss that was decided and a pending class
10  certification motion.
11          Notwithstanding how much had been done, there was
12  also -- and it's relevant to consider the -- where the case
13  still had to go and the amount of expense and uncertainty that
14  would attend litigating the case to its conclusion.
15  Undoubtedly there would have been further *Daubert* motions, a
16  summary judgment motion.  However, those motions may have been
17  decided, given the stakes of the litigation, it is highly
18  likely that there would have been appeals.  And even if the
19  plaintiffs prevailed at summary judgment or at trial or on
20  appeal or all of the above, any higher award that they might
21  have achieved -- and that itself is speculative -- would also
22  be subject to being eroded by the substantial additional
23  litigation costs and the time value of money that it would
24  take to get this litigation to ultimately a final conclusion.
25          So all of that weighs heavily in favor of approval of

1  the settlement, as does the opinion of lead -- the lead
2  plaintiff, who is a large institutional investor, has a very
3  substantial stake in the outcome of this litigation and
4  participates in other similar litigation.  The opinion of
5  class counsel, again, highly experienced in these cases, is
6  also a factor that weighs and the Court takes into
7  consideration, and, in addition, the favorable reaction of the
8  class, though extensive efforts to provide notice to all
9  potential members of the class has been conducted.
10          There have been only 11 notices of exclusion,
11 opt-outs from the class; only one objection that a very
12 favorable response by the class members also weighs in favor
13 of settlement.  And I note as well in that regard that there
14 have been no objections for concerns raised with respect to
15 the plan of allocation, which the Court has reviewed and finds
16 to be a thorough and fair, reasonable effort to fairly
17 allocate the proceeds of this settlement to class members
18 according to their holdings and the periods in which they
19 purchased those holdings during the class period.
20          So I have considered all of those factors with
21 respect to the settlement -- the proposed settlement.  They
22 all weigh, without exception, in favor of approval of the
23 settlement.  And on that basis, I find that this is a fair and
24 reasonable settlement of the claims asserted in this party,
25 and I will grant final approval of that settlement.

1          With respect to fees for class counsel, lead counsel
2   has requested a fee award of 26 percent of the settlement
3   fund, $11,050,000, plus expenses of about 1.1 million, and in
4   addition a pro rata share of the interest earned by the
5   settlement fund since it was established.  The use of the --
6   a percentage of the fund is a perfectly acceptable means of
7   assessing a fee for counsel, and there's no question that the
8   requested percentage of 26 percent is at the low end
9   of percentages commonly awarded in complex securities fraud
10  cases, the presumptive range of which is typically about
11  33 percent.  The studies cited in lead counsel's motion show
12  that recoveries between 25 to 30 percent are typical, and the
13  range in this case, in any event, is particularly well
14  supported by the quality of counsel for the plaintiffs, as
15  well as the quality of the counsel for the defendants.
16  High-quality arguments on one side demand high-quality,
17  diligent efforts on the other side, and that has been the
18  Court's experience in the course of this lit igation.
19         Also warranting the fee award is the complexity of
20  the litigation, the length of the litigation that has already
21  taken place, and, as well, the potential length is relevant
22  from the standpoint of what counsel signed on for in terms of
23  this case going forward and what would potentially be
24  necessary in this case.
25         The amount at stake in the litigation is also a

1   factor that influences the reasonableness of the fee.  There
2   is a huge amount at stake here, consequently a huge investment
3   in the case that class counsel has to make.  And sometimes
4   those investments play out.  Sometimes they don't.  And that
5   has to be reflected in the fees that are awarded when the
6   settlement or the resolution is favorable.
7            I also note that the percentage that's requested is
8   less than the lodestar amount.  Usually when we talk about the
9   lodestar in connection with the fee request, we're talking
10  about what's the proper positive multiple of the lodestar, but
11  here the multiplier is actually negative, or less than one.
12  The lead counsel is asking for less than the lodestar, which
13  certainly supports the reasonableness of the percentage that
14  has been requested.
15           Again, I also note there have been no objections by
16  any class member to the requested fee recovery and that the
17  fee -- proposed fee award is supported by the lead plaintiff,
18  who is a substantial institutional investor and negotiated the
19  fee with counsel and who is in a very good position to
20  understand whether that is a reasonable fee to pay to counsel.
21           As for the expenses, those are reasonable in light of
22  the length of the litigation, the status and scope of fact
23  discovery that has taken place and the complexity of the
24  expert discovery that has taken place.
25           So on all those bases, I find that the fee award

1  requested by counsel is fair and reasonable in this case, and
2  I will approve that award and also the relatively, in the
3  scheme of things, minor request for fees by Mr. Miller's firm
4  as local counsel here working on behalf of lead counsel.  So I
5  will approve those fee awards as well.
6        I think that covers everything I need to cover.
7  Actually, let me just double-check.  I think there might have
8  been one -- there was one change I'm going to make to the
9  final judgment order.  Paragraph 13 says, "By consent of the
10 settling parties, the Court shall retain jurisdiction."  The
11 consent of the settling parties has no bearing on the Court's
12 jurisdiction one way or the other, so I'm just striking that
13 statement.  Paragraph 13 will just read, "The Court shall
14 retain jurisdiction for purposes of enforcing the terms of
15 this judgment," et cetera.
16        I think that's it.  Anything anybody thinks I need to
17 cover that I have not covered?
18        MR. ROBBINS:  No, Your Honor.
19        THE COURT:  All right.  I will sign those orders.
20 They will go out today.  It's been a pleasure dealing with you
21 all.  I appreciate the very high-quality legal work that I've
22 seen in this case.  I appreciate the fact that I didn't have
23 to ultimately make a ruling on the price impact issue.  And
24 I'll -- I saved my research.
25        All right.  Thank you all.  Congratulations on

1   getting this resolved, and I assume you all will go have a
2   well-earned beverage or two.
3           MR. ROBBINS:  Thank you, Your Honor.
4           THE COURT:  Okay.  Take care.
5           MR. FUCHS:  Thank you.
6      (Which were all of the proceedings had.)
7
8                           CERTIFICATE
9
10  I certify that the foregoing is a correct transcript from the
11  record of proceedings in the above-entitled matter.
12
13  */s/Kelly M. Fitzgerald*          *January 29, 2016*
14  _____          _____
    Kelly M. Fitzgerald                       Date
15  Official Court Reporter